942 F.2d 793
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Nicolaas P.J. SANDMANN, Plaintiff-Appellant,
v.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a corporate
instrumentality of the United States, Defendant-Appellee.
 No. 90-15305.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 16, 1991.
Decided Aug. 22, 1991.
 
 1
 Before ALARCON and RYMER, Circuit Judges, McDONALD, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Nicolaas P.J. Sandmann appeals from an order denying his motion for summary judgment, granting summary judgment in favor of the Federal Savings and Loan Insurance Corporation (FSLIC),[1] and dismissing his action for declaratory relief and damages in its entirety. Sandmann contends that summary judgment was improperly granted in favor of FSLIC because the district court did not first rule on his pending motions, erroneously considered the credibility of his direct evidence, and failed to indicate whether it applied federal, California, or Dutch law in interpreting the terms of the settlement agreement.
 
 
 4
 We discuss each of these contentions, and the facts pertinent thereto, under separate headings.
 
 
 5
 * FAILURE TO RULE ON THE MERITS OF PENDING MOTIONS
 
 
 6
 Sandmann contends that the district court erred in granting FSLIC's motion for summary judgment without first ruling on the merits of his motion to compel the production of a memorandum written by a partner in the Amsterdam Office of the law firm of Baker & McKenzie, and for a continuance of the trial date. The district court did not err in refusing to decide the merits of these motions.
 
 
 7
 A party opposing a motion for a summary judgment may obtain a continuance upon a showing, supported by an affidavit, that he or she needs additional evidence to rebut the moving party's evidence. Fed.R.Civ.P. 56(f). Sandmann concedes that he failed to file an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Sandmann contends that his motion to compel and to continue the trial date, however, were sufficient to invoke Rule 56(f). Formal compliance with Rule 56(f) is excused if a showing is made that evidence is sought that is necessary to oppose the motion for a summary judgment. See Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518-19 (9th Cir.1987) (pending discovery motion was sufficient to satisfy Rule 56(f) because it indicated "the purpose for which [the] information was sought").
 
 
 8
 Sandmann's motions did not indicate that further evidence was necessary to oppose the motion for summary judgment. In his opposition to FSLIC's cross-motion for summary judgment, Sandmann did not state that the information sought in his pending motion to compel discovery would preclude summary judgment. Furthermore, Sandmann's earlier requests for expedited discovery and an earlier trial date were granted by the court. The district court did not err in declining to consider the merits of the motion to compel or the motion for a continuance prior to ruling on FSLIC's motion for a summary judgment. The motion to continue the trial date became moot upon the district court's determination that there was no genuine issue of fact or material disputed. Therefore, it was unnecessary to rule on the merits of this motion.
 
 
 9
 Sandmann also complains that the district court erred in failing to rule on the merits of his motion to strike prior to granting FSLIC's motion for a summary judgment. We disagree.
 
 
 10
 In ruling on FSLIC's motion for a summary judgment, the district court announced that it did not consider "any material that is the subject of Sandmann's motion to strike." Thus, at least for purposes of ruling on the summary judgment motions, the court granted Sandmann's motion to strike.
 
 
 11
 Any inadmissible evidence contained on the material that was the subject of the motion to strike was not considered by the court. Accordingly, Sandmann has failed to show that he was harmed by the failure of the district court to rule on the merits of his motion to strike prior to granting summary judgment.
 
 II
 EXTRINSIC EVIDENCE OF THE PARTIES' INTENT
 
 12
 Sandmann asserts in his deposition testimony that in the discussions leading up to the December 28, 1987, settlement agreement, he informed Nicolaas Vink and Gijsbert Loos, FSLIC's attorneys, that he wanted to settle the action filed by FSLIC in the Northern District of California, entitled Federal Savs. & Loan Ins. Corp., a corporate instrumentality of the United States v. Siddarth S. Shah, et al. (No. C 87 1197 RHS) (Shah-Centennial case), as well as the disputes arising out of an action filed in the Netherlands by Columbus Savings and Loan Association (Columbus Case). Sandmann also testified that "Mr. Vink confirmed that the agreement would resolve everything with FSLIC and Columbus" and that it would "end all disputes." (Emphasis added.)
 
 
 13
 The district court was required to accept as true Sandmann's evidence concerning his direct testimony regarding facts that he perceived. McLaughlin v. Lui, 849 F.2d 1205, 1209 (9th Cir.1988). The district court did not disregard Sandmann's percipient, direct testimony. Instead, the district court rejected the inference that it was asked to draw from the fact that Sandmann expressed his desire to settle the Shah-Centennial case as well as the existing disputes between Columbus and FSLIC. There is no direct evidence in the record that the parties mutually assented to a settlement of the Shah-Centennial case. In ruling on a motion for a summary judgment, a district court may refuse to draw unreasonable inferences from circumstantial evidence. In re Coordinated Pretrial Proceedings, 906 F.2d 432, 441 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2274 (1991). The district court concluded that Sandmann's "contentions" with respect to the meaning of the December 28 letter were "inherently incredible."
 
 
 14
 In Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), the Supreme Court instructed: "It follows from these settled principles that if the factual context renders respondents' claim implausible--if the claim is one that simply makes no economic sense--respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." Id. at 587. We agree with the district court that the inference that Sandmann asks that we draw from his direct testimony makes no economic sense. It does not logically follow that simply because Sandmann expressed his desire during negotiations to settle the Shah-Centennial case, the agreement ultimately reached by the parties was intended to settle all disputes between FSLIC and Sandmann in the Shah-Centennial case.
 
 
 15
 Beginning in February 1987, Sandmann's American counsel, Lawrence Callaghan, began negotiating with FSLIC in an attempt to settle the Columbus case. While these negotiations were pending, FSLIC filed the Shah-Centennial case. In the Shah-Centennial matter, FSLIC prayed for reimbursement by Sandmann of $3,000,000 and 10,000,000 in punitive damages. Mr. Callaghan's efforts to settle the Columbus case continued until September 1987. These negotiations were limited to the Columbus case. On September 4, 1987, Callaghan received Sandmann's offer to settle the Columbus case for $250,000. FSLIC's demand at that time was $340,000, or $90,000 more than Sandmann's offer.
 
 
 16
 The December 28, 1987, settlement required Sandmann to pay a total of $295,000. This figure precisely split the difference between Sandmann's last offer and FSLIC's demand in the Columbus case.
 
 
 17
 Acceptance of Sandmann's argument that the letter agreement signed on December 28, 1987, was intended by the parties to settle the Shah-Centennial case would require that an inference be drawn that FSLIC agreed to settle a $3,000,000 reimbursement claim for $45,000. This argument is implausible. Summary judgment was properly granted.
 
 III
 
 18
 IMPACT OF THE DISTRICT COURT'S FAILURE TO INDICATE THE APPLICABLE LAW
 
 
 19
 Sandmann also contends that the district court erred in failing to indicate which law it considered in granting FSLIC's motion for a summary judgment. We review de novo an order granting summary judgment. United States v. King Features Entertainment, Inc., 843 F.2d 394, 397 (9th Cir.1988).
 
 
 20
 Sandmann argues that under Dutch law, the letter agreement released him of any liability arising out of the Shah-Centennial case. Rule 52(a) of the Federal Rules of Civil Procedure provides that "conclusions of law are unnecessary on motions under Rules 12 or 56." Furthermore, we are required to review the district court's interpretation of a contract de novo. L.K. Comstock & Co. v. United Engineers & Constructors, Inc., 880 F.2d 219, 221 (9th Cir.1989). We note also that because our review is de novo, we must make an independent determination whether there is any material difference in the laws that might be applicable to the interpretation of the agreement. Liew v. Official Receiver and Liquidator, 685 F.2d 1192, 1197-98 (9th Cir.1982). Thus, any error of the district court in its application of the law has no impact on our responsibility in reviewing an order granting summary judgment. We conclude that whether we apply federal common law, California Law, or Dutch Law, the agreement is not reasonably susceptible to the interpretation that it was the intent of the parties to settle FSLIC's claim against Sandmann in the Shah-Centennial case.
 
 
 21
 We are persuaded that the words set forth in the settlement agreement refer solely to Columbus disputes. The December 28, 1987, settlement letter begins with the following reference "Re: Columbus/Sandmann." The text of the December 28 letter states that it confirms the oral agreement to terminate "existing disputes between my clients, Federal Savings and Loan Insurance Corporation and Columbus Savings and Loan Association, [and you]." The record shows that T.F.W. Overdijk, who signed the letter on behalf of his firm, Baker & McKenzie, represented FSLIC in the Columbus case. Baker & McKenzie did not represent FSLIC in the Shah-Centennial case.
 
 
 22
 The letter agreement also provides that payments are to be made by Sandmann "in the name of trust account Mrs. Caron & Stevens (reference Columbus/Sandmann)." In the Columbus case, FSLIC was asserting claims on behalf of Columbus Savings and Loan. The Shah-Centennial case was filed by FSLIC to recover money owed to it in its corporate capacity as an insurer. The settlement did not provide that payments be made to FSLIC to reimburse it in connection with its claim for reimbursement in the Shah-Centennial case.
 
 
 23
 Sandmann argues that the reference to "existing disputes" indicates that the settlement must be read as including FSLIC's claims regarding the Shah-Centennial case. The record shows, however, that there were other legal proceedings in the Netherlands involving Sandmann and Columbus Savings and Loan Association. The plain language used in the agreement does not include a settlement of FSLIC's claims against Sandmann in the Shah-Centennial case.
 
 
 24
 When federal law controls the interpretation of a contract, we "may look to general principles for interpreting contracts." Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1032 (9th Cir.1989). These general principles include the following:
 
 
 25
 "A written contract must be read as a whole and every part interpreted with reference to the whole." Shakey's Inc. v. Covalt, 704 F.2d 426, 434 (9th Cir.1983). "Preference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." Id. "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." International Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1406 (9th Cir.1985). A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation. Castaneda v. Dura-Vent Corp., 648 F.2d 612, 619 (9th Cir.1981).
 
 
 26
 Id.
 
 
 27
 As noted above, the contract refers to "Columbus/Sandmann." It purports to terminate existing disputes between "Federal Savings and Loan Insurance Corporation and Columbus Savings and Loan Association" and Sandmann. A reasonable interpretation of the language used by the parties compels the conclusion that it refers solely to disputes between Sandmann and Columbus. Federal common law would not preclude FSLIC from prosecuting its claim against Sandmann in the Shah-Centennial case.
 
 
 28
 Contrary to Sandmann's contention, application of California law would not require reversal.
 
 
 29
 Under California law, even if the written agreement of the parties is clear and unambiguous on its face, the trial judge must consider relevant extrinsic evidence that can prove a meaning to which the language of the contract is reasonably susceptible. However, if after considering extrinsic evidence the court finds the language of the contract is not reasonably susceptible to the asserted interpretation and is unambiguous, extrinsic evidence cannot be received for the purpose of varying the terms of the contract.
 
 
 30
 United States v. King Features Entertainment, Inc., 843 F.2d 394, 398 (9th Cir.1988) (citations omitted).
 
 
 31
 As discussed above, Sandmann's direct evidence that he expressed his desire during negotiations that the Shah-Centennial case be settled does not support an inference that the parties mutually agreed to resolve the Shah-Centennial case. We are persuaded that the language used by the parties is not reasonably susceptible to Sandmann's interpretation. The extrinsic evidence presented by Sandmann does not create an ambiguity in the text of the agreement.
 
 
 32
 Both parties have directed us to the same provisions of Dutch law. Section 1891 of the Dutch Civil Code provides that settlements "are limited to their subject, the release therein of all rights actions and claims shall be construed to the dispute that has given rise to the [accord]." Section 1892 provides: "Accords resolve only those disputes that are covered by its terms. These terms can be expressed generally or explicitly or by clear implication." As discussed previously, the settlement agreement expressly refers to disputes between Sandmann and Columbus.
 
 
 33
 Jos Wouters, Sandmann's expert on Dutch law, supports our view that an application of Dutch law compels an affirmance in this matter. Mr. Wouters testified that under Dutch law "[w]hat is decisive for the answer on the question of whether an agreement has been concluded and what the contents of an agreement are, is what the persons involved have communicated to each other and what they mutually have derived from and may have derived from each others communications and behavior." (Emphasis added.) There is no evidence in the record of a mutual agreement to include settlement of the Shah-Centennial case in the December 28, 1987, agreement.
 
 
 34
 Because we conclude that there was no evidence of a mutual intent to settle the Shah-Centennial case, we need not decide whether FSLIC's agents had the apparent authority to settle the Shah-Centennial dispute in the negotiations that led to the December 28, 1987, agreement.
 
 
 35
 Affirmed.
 
 
 
 *
 Honorable Alan A. McDonald, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir., R. 36-3
 
 
 [1]
 FSLIC was the original party in this litigation. On August 9, 1989, however, FDIC became the statutory successor to FSLIC in its corporate capacity. FDIC was substituted into this lawsuit by operation of law. Pub.L. 101-73, 103 Stat. 183, 253 (August 9, 1989). "FSLIC" will be used throughout this opinion to maintain consistency