Ann McLAUGHLIN, Secretary of Labor, U.S. Department of Labor,* Plaintiff-Appellee,

v.

Joe H. LIU, Individually and doing business as J L Fashions, Defendants–Appellants.

No. 87–5669.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1987.

Decided June 14, 1988.

---

* Ann McLaughlin is substituted for her predecessor, William Brock, III, as Secretary of the Department of Labor. Fed.R.App.P. 43(c)(1).

Edwin M. Rosenberg, Los Angeles, Cal., for defendants-appellants.

Gerald F. Krizan, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellee.

Before BROWNING, Chief Judge, HUG, and REINHARDT, Circuit Judges.

JAMES R. BROWNING, Chief Judge:

The district court granted summary judgment to the Secretary in an action for violation of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S. C. § 201 *et seq.*, during the period from February 1, 1983 to June 28, 1985.[1] The Secretary's showing in support of the motion consisted of two items. The first was a government investigator's affidavit with accompanying photocopies of Liu's original piecework records for the biweekly pay period ending April 6, 1985. These records demonstrated that during this pay period Liu did not pay an overtime premium for overtime work; rather, each employee's total earnings were exactly equal to the value of the piecework he or she produced during all of the hours worked in that period. The second item upon which the

Secretary relied was Liu's response to the Secretary's Requests for Admissions, in which Liu agreed with the statement that "[e]mployees paid piecework were paid only piecework."[2]

In opposition to the motion for summary judgment, Liu relied on his sworn declaration in which he asserted that he had paid an overtime premium for piecework performed during overtime hours for all pay periods except the period ending April 6, 1985, and that during this one period he had deviated from his practice of prior and subsequent pay periods on the mistaken advice of an accountant friend whom he named. Liu attached a "piecework register" purporting to show a dollar amount of piecework performed by each employee which was less than the total compensation paid to employees who had worked overtime by an amount equal to overtime premiums properly calculated. Liu asserted in his declaration that his piecework register and payroll records were accurate. He also submitted sworn answers to interrogatories stating he paid the proper overtime premium and describing the manner in which the premium was calculated—a method the Secretary concedes was the proper one for calculating overtime for employees paid on a piecework basis.[3]

The issue is whether the evidence created a conflict that could only be resolved at trial regarding the central issue of whether an overtime premium was paid during pay periods other than that ending April 6, 1985.[4]

The Secretary argues the district court was authorized to grant summary judg-

1. The district court granted summary judgment against Liu on the issue of waiver of his defense under 29 U.S.C. § 260 and on the government's charge that he had violated the FLSA's record-keeping requirements. These rulings are not challenged on appeal.

2. This statement cannot be viewed as conclusively admitting that no overtime premium was paid. It could reasonably be read as indicating that employees who were paid on a piecework basis did not *also* receive hourly wages. This reading is confirmed by Liu's denial of Requests Nos. 8 and 9, which asked in a more straightforward fashion whether Liu's records showing the payment of an overtime premium were false.

3. The Secretary complains that Liu's opposition to the summary judgment motion relied upon materials in the record before the filing of that motion, rather than presenting affidavits. However, it is well-established that a party opposing summary judgment may rely on material already on file in the case. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2722 at 55–56 (2nd ed. 1983).

4. We affirm the grant of summary judgment to the extent it found Liu in violation of the FLSA overtime requirements for the April 6, 1985 pay period.

ment by *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), because Liu's sworn declaration and sworn answers to interrogatories were "implausible."[5] The Secretary relies on the following language from the *Matsushita* opinion:

> It follows from these settled principles that if the factual context renders respondents' claim implausible—if the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary.
>
> *Id.* at 587, 106 S.Ct. at 1356.

In a case such as this in which the opposition to a motion for summary judgment rests upon sworn statements, the Secretary's reading of *Matsushita* would abrogate the long-standing rule that credibility may not be resolved by summary judgment—a rule reiterated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), within ninety days after *Matsushita* was filed: "Credibility determinations ... are jury functions, not those of a judge ... ruling on a motion for summary judgment.... The evidence of the non-movant is to be believed...." *Id.* at 255, 106 S.Ct. at 2513.

It is clear from the *Matsushita* opinion that the Court was not speaking of direct evidence, but of circumstantial evidence. *Matsushita* authorizes an inquiry on summary judgment into the "implausibility" of inferences from circumstantial evidence, particularly in antitrust conspiracy cases, not an inquiry into the credibility of direct evidence.[6]

■ This case does not involve inferences from circumstantial evidence. Liu's

---

**5.** The Secretary points to several circumstances casting doubt on Liu's defense. Liu destroyed the current records of employees' piecework earnings despite FLSA regulations which require preservation of such records for three years, (*see* 29 C.F.R. § 516.5), thereby shifting the burden of producing evidence to Liu under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). Liu claims to have changed his pay computation practices only during the single two-week pay period for which the Secretary had obtained original piecework records, and admitted to the violations for the single pay period only after it was revealed that the Secretary had copies of the piecework tickets and all of the piecework computations for that period. Liu claims he abandoned his long-practiced method of computing overtime for this two-week period on the casual advice of a friend, and offers no explanation for returning to it. The district court also noted that Liu's "piecework register" may not have been prepared until after the litigation had begun.

**6.** In *Matsushita* the Court noted the absence of direct evidence of a predatory pricing conspiracy. 475 U.S. at 583, 106 S.Ct. at 1354. Left only with circumstantial evidence, the Court stated that "antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case." *Id.* at 588, 106 S.Ct. at 1357. In such a case, the Court said the plaintiff resisting a summary judgment motion "must show that the inference of conspiracy is reasonable in light of the competing inference of independent action or collusive action that could not have harmed respondents." *Id.* The Court noted that in *Monsanto Co. v. Spray-Rite Service*

*Corp.*, 465 U.S. 752, 763, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984), "we emphasized that courts should not permit factfinders to infer conspiracies when such inferences are implausible, because the effect of such practices is often to deter procompetitive conduct." *Matsushita*, 475 U.S. at 593, 106 S.Ct. at 1360. "Thus, mistaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect." *Id.* at 594, 106 S.Ct. at 1360. The Court noted that the only "direct evidence" of a predatory pricing conspiracy on which the lower court relied was direct evidence of subsidiary combinations which at most was only circumstantial evidence of the overall predatory pricing conspiracy plaintiffs sought to prove. *Id.* at 595–96, 106 S.Ct. at 1360–61. The Court reviewed this circumstantial evidence and concluded it did not establish a plausible motive to engage in the alleged predatory pricing conspiracy. *Id.* at 596, 106 S.Ct. at 1361. "Lack of motive bears on the range of permissible conclusions that might be drawn from ambiguous evidence: if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy." *Id.* at 596–97, 106 S.Ct. at 1361. The Court concluded that plaintiffs alleging an antitrust conspiracy involving predatory pricing can only avoid summary judgment if they produce evidence "tend[ing] to exclude the possibility that petitioners underpriced respondents to compete for business rather than to implement an economically senseless conspiracy." *Id.* at 597–98, 106 S.Ct. at 1362 (citations and quotations marks omitted).

sworn statements that he calculated and paid overtime in accordance with the requirements of law are direct evidence of the central fact in dispute. Liu does not ask that inferences be drawn in his favor, but that his testimony be taken as true. To this he is clearly entitled under *Anderson* ("The evidence of the non-movant is to be believed," 477 U.S. at 255, 106 S.Ct. at 1513) and a host of other decisions.[7] Summary judgment cannot be justified in the face of such evidence.

Our opinions on summary judgment subsequent to *Anderson* and *Matsushita* have honored the difference between weighing direct evidence and refusing to draw unreasonable inferences from circumstantial evidence. We have upheld summary judgment on the basis of *Matsushita*'s "implausibility" standard only where the non-movant relied on inferences from circumstantial evidence.[8] We analyzed the distinction explicitly and at some length in *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). We noted that at the summary judgment stage of the litigation,

> "the judge does not weigh conflicting evidence with respect to a disputed material fact.... Nor does the judge make credibility determinations with respect to

statements made in affidavits, answers to interrogatories, admissions, or depositions.... These determinations are within the province of the fact-finder at trial. Therefore, at summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.

*Id.* (citations omitted).

Turning to inferences from circumstantial evidence, we said:

> Inferences must also be drawn in the light most favorable to the nonmoving party.... Inferences may be drawn from underlying facts that are not in dispute, such as background or contextual facts ..., and from underlying facts on which there is conflicting direct evidence but which the judge must assume may be resolved at trial in favor of the nonmoving party. Assuming the existence of these underlying facts, however, an inference as to another material fact may be drawn in favor of the nonmoving party only if it is "rational" or "reason-

---

7. *See* 10A Wright, Miller & Kane, *supra,* § 2727 at 128 n. 6 (citing cases).

8. In *California Arch. Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466 (9th Cir.1987), we upheld summary judgment against plaintiffs who claimed that defendant defrauded them by encouraging them to buy more goods but keeping its plans to close secret. Stressing that "there is no direct evidence—no 'smoking gun'", we noted that "[h]ad Franciscan planned to close, it is unlikely that it would have undertaken these expensive projects. It is also unlikely that Franciscan would go to such lengths merely to encourage the dealers to buy more tile. No economic incentive to act in that manner exists. Therefore to avoid the stigma of implausibility, the evidentiary burden of the dealers is heavy." *Id.* at 1470.

In *Richards v. Neilsen Freight Lines,* 810 F.2d 898 (9th Cir.1987), we affirmed summary judgment in reliance on *Matsushita* where there was no direct evidence of the antitrust conspiracy and the circumstantial evidence "was as consistent with permissible competitive behavior as with illegal conspiracy." *Id.* at 904. We explained that *Matsushita* addressed inference-drawing: "the only inferences permitted ... are

those that are reasonable given the substantive law which is the foundation for the claim or defense.... In the context of the case before us, the substantive law is the law of antitrust, and if the claim makes no economic sense, a speculative inference from the jury will not help it. In such an instance, the record on summary judgment must contain further persuasive evidence if it is to support the claim." *Id.* at 902. *See also The Jeanery, Inc. v. James Jeans, Inc.,* 849 F.2d 1148, 1152, 1157, 1160, 1163–64 (1988); *Wilcox v. First Interstate Bank of Oregon, N.A.,* 815 F.2d 522, 525–28 (9th Cir.1987) (sustaining the grant of JNOV on weak circumstantial evidence of a price fixing conspiracy).

*United States v. King Features Entertainment, Inc.,* 843 F.2d 394, 399 (9th Cir.1988) is not to the contrary. The sole issue in that case was whether a contract interpretation was plausible, which "is a matter of law." *Id.* at 398. It is of course permissible on summary judgment to assess the plausibility of a legal argument, as opposed to assessing the weight or credibility of direct evidence of a material fact.

able" and otherwise permissible under the governing substantive law.

*Id.* at 631 (citations omitted).

We continued:

If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

*Id.* at 631–32.

We reiterated *"[w]here there is no direct evidence of a conspiracy,* the defendant may discharge its summary judgment burden by proffering a 'plausible and justifiable' alternative interpretation of its conduct that rebuts the plaintiff's allegation of conspiracy." *Id.* at 632 (emphasis added). And again "[w]here an antitrust plaintiff's allegation of a conspiracy *is based solely on indirect evidence that is capable of inferences of both lawful and unlawful behavior,* the plaintiff must produce some evidence tending to exclude the possibility that the defendant acted independently." *Id.* (emphasis supplied).

Other circuits also have explicitly noted that *Matsushita*'s implausibility analysis is confined to drawing inferences from circumstantial evidence. *See Arnold Pontiac–GMC, Inc. v. Budd Baer, Inc.,* 826 F.2d 1335, 1338 (3d Cir.1987) (reversing summary judgment and distinguishing *Matsushita* because "here plaintiff, unlike the plain-

tiffs in *Matsushita,* has produced direct evidence of a conspiracy"). In *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291 (5th Cir.1987), the Fifth Circuit reversed a summary judgment based upon the district court's conclusion that the movant's documentary showing on the central issue of fact was "unreasonable" in contrast to the "inaccurate and imprecise recollections" of the testimony of the non-movant and his witnesses on the same issue. *Id.* at 293. Noting *Matsushita*'s doctrine that "a judge may require parties making an 'implausible' claim to 'come forward with more persuasive evidence to support their claim than would otherwise be necessary' to avoid summary judgment" (*id.* at 294), Judge Rubin emphasized, "The Supreme Court has not, however, approved summary judgments that rest on credibility determinations." *Id.* He continued:

The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed; it is for the jury at trial, not for the judge on a pretrial motion, to decide whose evidence is more credible. A judge assessing the "persuasiveness" of evidence presented on a motion for summary judgment may discount such evidence as unspecific or immaterial, but not as unbelievable. *Id.*[9]

Because Liu's sworn statement that he paid the proper overtime premium was "direct evidence of a material fact" (*T.W. Electric,* 809 F.2d at 631), the district court erred in granting summary judgment to the Secretary.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.

---

**9.** *See also* Note, *Summary Judgment and Circumstantial Evidence,* 40 Stan L.Rev. 491, 494–95 (1988) ("Since direct evidence concerning a historical fact therefore hinges on the witness' credibility and cognitive abilities, a true conflict concerning such evidence is exclusively within the province of the jury.... [A] conflict of direct evidence concerning a material historical fact may never be settled by the judge on a motion for summary judgment.... If the conflict concerns indirect evidence, the judge must make an initial determination that the inference to be drawn is a reasonable one, although it is in this area that the power of a judge under Rule 56 is most unclear."