112 F.3d 54
 R.B. VENTURES, LTD., Plaintiff-Appellant,
v.
Simon R. SHANE, Defendant-Cross-Defendant-Cross-Claimant-Appellee,
Gerald M. Ronson, Defendant-Cross-Defendant,
Heron International, PLC, Heron Financial Corporation,
Defendant-Cross-Claimant-Cross-Defendant.
 No. 788, Docket No. 96-7669.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 19, 1996.
Decided April 21, 1997.
 
 James R. Kahn, Bondy & Schloss, LLP, New York City (Joel S. Forman, New York City) for Plaintiff-Appellant R.B. Ventures, Ltd.
 Robert N. Chan, Ferber, Greilsheimer, Chan, & Esnner, New York City, for Defendant-Appellee Simon R. Shane
 Before KEARSE and CABRANES, Circuit Judges, and KELLEHER, District Judge.*
 KELLEHER, District Judge:
 Plaintiff R.B. Ventures, Inc. ("RBV") appeals from a judgment of the United States District Court for the Southern District of New York (Charles S. Haight, Jr., Judge ) granting defendants' motion for summary judgment on all counts. We have jurisdiction in this diversity action pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1291. The district court erred, RBV contends, by improperly applying a "heightened" evidentiary standard after concluding that RBV's claimed oral contract was "implausible." We agree, and now vacate the judgment and remand for trial.
 I. BACKGROUND
 RBV brought suit seeking the payment of approximately $2 million in real estate brokerage fees allegedly owed by Defendant Simon Shane ("Shane") pursuant to an oral contract. RBV also alleged that it was entitled to recover under theories of quantum meruit or unjust enrichment, as the "procuring cause" of the real estate transaction, and as a third-party beneficiary to an indemnification contract. Initially, RBV named Shane's joint venture partner, Gerald Ronson ("Ronson") and his affiliated companies, Heron International, PLC and Heron Financial Corporation (collectively, "the Heron Group") as co-defendants. RBV's claims against Ronson and the Heron Group were subsequently dismissed, but they both remain in this action as third-party defendants to Shane's cross-claim for indemnification and contribution.
 In 1980 and 1981, Equitable Debenture Corporation Manhattan, Inc. ("Equitable Debenture-Manhattan"), a corporation wholly owned by Defendant Shane through a complicated web of corporate entities, purchased property located at 66 and 70 East 55th Street in Manhattan. At some point thereafter, Shane became acquainted with a real estate broker named Richard Blitz ("Blitz"), who later formed the plaintiff corporation, RBV. Blitz told Shane that he knew of customers who might be interested in leasing the two properties. Ultimately, nothing came of this contact.
 In 1982, Shane formulated a plan to acquire the entire south side of 55th Street between Madison and Park Avenues, the block on which numbers 66 and 70 are located, in order, ultimately, to construct an office tower on that site. Shane created corporations of various names to acquire rights to purchase the properties in the future. Because Shane lacked the capital to complete the project himself, these future purchases hinged on his ability to find a purchaser for the entire site or a co-venturer to develop the site with him.
 A. The "Letter Agreement"
 In 1983, Blitz re-entered the scene. Before Shane allowed Blitz to assist in the search for a prospective purchaser, however, Shane required him to sign a confidentiality letter (the "letter agreement") with Equitable Debenture Corporation ("Equitable Debenture"), another of Shane's several corporate vehicles. The terms of that letter, dated October 10, 1983, prohibit Blitz from releasing any confidential information pertaining to the proposed project to third parties without the consent of Equitable Debenture. The letter also provides:
 You [Blitz] agree to look only to the purchaser for your commission in connection with any transaction that may materialize and, [sic ] under no circumstances shall [Equitable Debenture] be liable to you for a brokerage commission, any other compensation or reimbursement of your expenses.
 The letter agreement further provides:
 The provision of information concerning the properties and our discussions in relation thereto with you or any other persons shall not constitute an offer to anyone but only an invitation to others to make offers. Any agreements regarding the properties must be in writing and executed by both parties. The properties may be withdrawn or terms amended at any time and are subject to prior sale.
 In 1984, at some point after signing the letter agreement, Blitz began operating his brokerage business through the plaintiff corporation, RBV.
 In searching for a potential joint venture partner for Shane, Blitz contacted Weatherall, Green & Smith ("WGS"), a real estate consulting firm based in the United Kingdom. WGS in turn introduced Shane to Ronson, who, together with his affiliated companies, the Heron Group, expressed an interest in the venture. Subsequent negotiations between Shane and Ronson successfully culminated in two joint-venture contracts signed in August 1984 and May 1985.
 Under the first of these two agreements, the joint venture purchased a cluster of four parcels on the east half of 55th Street, including the two parcels already owned by Equitable Debenture. Under the second agreement, the joint venture acquired the remaining parcels on the south side of 55th Street as well as air rights accompanying the properties. Each acquisition under the two joint venture agreements was accomplished through a separate corporation formed by the joint venture.
 B. The June 28, 1984 letters
 In connection with the first joint venture purchase, Equitable Debenture agreed, per two separate letters signed by Blitz and dated June 28, 1984, to pay RBV $182,500 "as full compensation for [RBV's] services in connection with the sale of the Premises." The amount represented a commission of two-and-one-half percent, according to the letters.
 There is no dispute that this money was actually paid by Shane to RBV. What is disputed, however, are the circumstances surrounding this agreement.
 Shane maintains that the full extent of the agreement between Shane and RBV was memorialized in the two letters Blitz signed, dated June 28, 1984.
 RBV, on the other hand, contends that the two-and-one-half percent commission represented a "reduced fee" to which RBV agreed in return for Shane's oral promise to pay a "full commission" of six percent on the gross purchase price of the remaining 55th Street properties. This six percent commission, which would have entitled Plaintiff to an additional $1,954,993.90, became due when the joint venture purchased the final 55th Street parcel, in October of 1988.
 The district court below granted summary judgment on the grounds that Plaintiff failed to adduce sufficient evidence of this oral agreement. The district court then dismissed RBV's remaining claims for equitable relief and recovery under a third-party beneficiary theory.
 II. DISCUSSION
 A. Standard for Summary Judgment
 This court reviews the district court's grant of summary judgment de novo. Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir.1993). Summary judgment is proper pursuant to the Federal Rules "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 When reviewing the evidence, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir.1990), cert. denied, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). It is well settled, however, that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. To defeat such a motion, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S.Ct. at 2510 (internal quotation marks omitted).
 B. The Oral Contract Claim
 RBV claims that Shane owes it almost $2 million in real estate commissions pursuant to an oral contract.[1] In concluding that RBV had not met its burden in opposing Defendant Shane's motion for summary judgment, the district court noted that despite "extensive pretrial discovery," RBV "has presented but a single document evidencing the existence of an oral agreement: the affidavit of Blitz, plaintiff's owner and controlling officer." R.B. Ventures v. Shane, No. 91 Civ. 5678, 1996 WL 233690, at * 4 (S.D.N.Y. May 7, 1996). Moreover, "[t]he assertions in that affidavit are decidedly vague," the district court found, pointing to RBV's inability to specify precisely when the oral agreement was reached. "In describing the terms of the initial agreement," the district court noted, "Blitz does not define what he means by a 'full commission'; nor does he explain why he views the 2 1/2% figure as a 'reduced' commission." Id.
 The existence or non-existence of the oral agreement is, clearly, a material fact, as the district court acknowledged. In requiring RBV to come forward with more persuasive evidence than Blitz's affidavit, the district court imposed a "heightened" or "elevated" burden on RBV. The district court drew its requirement of a "heightened" standard of proof in this motion for summary judgment indirectly from the prominent Supreme Court decision in Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and directly from several cases from the mortgage foreclosure context. In applying this heightened standard, however, the district court erred.
 1. The Matsushita Decision
 In Matsushita, the Court determined "that if the factual context renders [the non-moving party's] claim implausible--if the claim is one that simply makes no economic sense--[the non-moving party] must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary." Id. at 587, 106 S.Ct. at 1356. Contrary to the district court's analysis, however, Matsushita does not thereby establish a "threshold" question of "plausibility" and then subject "implausible" claims to a "heightened" test. Rather, Matsushita reinforces the notion, central to summary judgment jurisprudence, that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Id.
 Properly understood, Matsushita stands merely for the unexceptionable proposition that it is the factual and legal context within which a party presents its evidence that determines what are the reasonable inferences to be drawn from that evidence. The opponent of a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts," and although the court must draw the inferences in favor of the non-moving party, the permissible inferences are ultimately limited by the relevant substantive law. Id. at 586-88, 106 S.Ct. at 1356 (stating that "antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case"). See also Eastman Kodak Co. v. Image Technical Services, 504 U.S. 451, 468, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992) (stating that "Matsushita demands only that the nonmoving party's inferences be reasonable in order to reach the jury").
 Accordingly, even where the surrounding circumstances indicate what has been termed, perhaps unfortunately, "implausibility," at the summary judgment stage the court should not "weigh" the evidence in the same manner as a trier of fact. As the Ninth Circuit has held, Matsushita authorizes only "an inquiry on summary judgment into the 'implausibility' of inferences from circumstantial evidence, ... not an inquiry into the credibility of direct evidence." McLaughlin v. Liu, 849 F.2d 1205, 1207 (9th Cir.1988); see also Adams v. Metiva, 31 F.3d 375, 382 (6th Cir.1994) (adopting Ninth Circuit approach). At summary judgment, the court must still construe the reasonable inferences in favor of the non-moving party. "In evaluating the sufficiency of the nonmoving party's evidence ... courts must still proceed very cautiously," even in the face of "implausible" claims. Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir.1988). "If reasonable minds could differ as to the import of the evidence," as we have previously explained, "and '[i]f ... there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.' " Id. (interpreting Matsushita and quoting In re Japanese Elec. Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir.1983), rev'd on other grounds sub nom. Matsushita, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538); see also Anderson, 477 U.S. at 255, 106 S.Ct. at 2513 ("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment.").
 2. The Mortgage Foreclosure Cases
 Furthermore, the district court took it as a blanket principle that at least where an oral promise is at issue "[i]t is well established that a disputed, uncorroborated affidavit standing alone is insufficient as a matter of law to raise an issue of material fact." Shane, 1996 WL 233690, at * 4 (citing Union Bank of Switzerland v. 890 Park Associates, No. 92 Civ. 1557, 1995 WL 121289, at * 5 (S.D.N.Y. March 20, 1995)). It is indeed true, as the district court noted, that this Circuit has previously recognized that a defendant mortgagor's "bare assertion" that a mortgagee agreed orally to forebear foreclosure may be insufficient to raise a genuine issue of material fact as to the existence of the defense of waiver and estoppel in the application of New York mortgage foreclosure law. See, e.g., Citibank, N.A. v. Nyland (CF8) Ltd., 878 F.2d 620, 622-23 (2d Cir.1989) (citing New York State Urban Dev. Corp. v. Marcus Garvey Brownstone Houses, Inc., 98 A.D.2d 767, 771, 469 N.Y.S.2d 789, 795 (2d Dep't 1983)); Security Pacific Mortgage & R. Est. Servs. v. Canadian Land Co. of Am., 690 F.Supp. 1214, 1219 (S.D.N.Y.1988).
 The cases upon which the district court relied are all drawn from the mortgage foreclosure context, and establish a summary judgment standard relevant for the affirmative defenses of promissory estoppel or waiver. These cases are, accordingly, limited by the relevant state substantive law.[2]
 Without passing on the correctness of the district court's analysis of the summary judgment case law relevant to the New York law of mortgage foreclosure, which is not now before us, we note simply that the instant case is readily distinguishable. This is not a mortgage case invoking a defense of promissory estoppel or waiver as against a plaintiff otherwise entitled to judgment as a matter of law on the basis of a written, integrated contract. In the instant case, RBV asserts that Shane made an oral promise to compensate it, and offers direct testimony to this effect. Absent some special limitation imposed by the relevant substantive law, the oral testimony of the plaintiff is a permissible and sufficient means of establishing that a genuine issue of material fact exists requiring a trial. See, e.g., Rule v. Brine, Inc., 85 F.3d 1002, 1013 (2d Cir.1996) (plaintiff's testimony of defendant's oral promise to pay fair royalty sufficient to preclude summary judgment); Yaris v. Arnot-Ogden Memorial Hosp., 891 F.2d 51, 53 (2d Cir.1989) (holding that whether disputed oral promise was made is question for finder of fact); see also Nowlin v. Resolution Trust Corp., 33 F.3d 498, 508 (5th Cir.1994) (holding plaintiffs' affidavit and deposition testimony sufficient to preclude grant of summary judgment for defendant on oral contract claim, despite existence of written contract). Neither the district court nor Shane upon appeal identifies any substantive constraint imposed by New York law upon the legal enforcement of the type of oral promise at issue before us. Consequently, in granting Shane's motion for summary judgment on the oral contract claim despite the direct testimony of Blitz as to the existence of the oral contract, the district court erred.
 C. The Remaining Counts
 The district court, having found that Plaintiff's purported oral agreement was implausible, further concluded that Defendant was entitled to judgment as a matter of law on RBV's remaining causes of action. RBV had claimed: 1) that it was entitled to recover under an unjust enrichment/quantum meruit theory; 2) that it was entitled to a "fair and reasonable" commission as the "procuring cause" of the joint venture; and 3) that RBV was entitled to recover as a third-party beneficiary of an indemnification contract between Shane and the Heron Group.
 The district court dispensed with these causes of action in short order, and so shall we.
 1. Unjust enrichment /quantum meruit
 In addition to the oral contract claim, RBV brought a claim for quantum meruit or unjust enrichment. In order to recover on a quantum meruit theory under New York law, RBV must prove that: 1) Shane was enriched; 2) such enrichment was at RBV's expense; and 3) circumstances were such that in equity and good conscience Shane should compensate RBV. Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 20 (2d Cir.1983).
 The district court dismissed RBV's claim for quantum meruit on the grounds that the only injustice alleged by RBV was the breach of the oral contract with respect to which the court had already granted summary judgment.
 
 
 1
 This reasoning is in error. As the district court recognized, claims for unjust enrichment or quantum meruit do not hinge on the existence of an agreement, oral or otherwise. Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 433 (2d Cir.1995). Indeed, these are non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter. City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 48 (2d Cir.1988) (under New York law, finding quasi-contractual relief "unavailable where an express contract covers the subject matter"). RBV does not argue that it is entitled to compensation in quantum meruit because of the oral contract, but because it was the "procuring cause" of the 55th Street project, and has been unjustly denied adequate compensation.
 
 
 2
 Taking the evidence in the light most favorable to the non-moving party, Shane was enriched by the consummation of the joint venture. This enrichment was at RBV's expense to the extent that RBV was not adequately compensated for its role in bringing the joint venturers together. The determination of this element and of the final element hinge on whether or not RBV was the "procuring cause" of the transaction. As discussed below, there is a genuine issue of material fact regarding whether or not RBV should be regarded as the "procuring cause" for the entire 55th Street project.
 
 
 3
 2. "Procuring cause"
 
 
 4
 "A broker earns his commission when 'a sale is effected through his agency as the procuring cause.' " New Spectrum Realty Services, Inc. v. Nature Co., 42 F.3d 773, 776 (2d Cir.1994) (quoting Salzano v. Pellillo, 4 A.D.2d 789, 790, 165 N.Y.S.2d 550, 553 (2d Dep't 1957)). "When no agreement, express or implied, governs the parties' behavior, a plaintiff may recover in quasi-contract against a defendant who 'received a benefit from the plaintiff's services under circumstances which, in justice, preclude him from denying an obligation to pay for them.' " New Spectrum Realty, 42 F.3d at 777 (quoting Bradkin v. Leverton, 26 N.Y.2d 192, 197, 309 N.Y.S.2d 192, 196, 257 N.E.2d 643, 645 (1970)).
 
 
 5
 The district court dismissed RBV's "procuring cause" claim on the grounds that the "procuring cause" doctrine does not provide a separate cause of action but merely helps to define when a broker is entitled to his commission, whether it be due under an agreement, written or implied, or principles of quantum meruit. The district court erred in not considering the "procuring cause" claim, because it is clearly relevant to the quantum meruit claim that was alleged by RBV.
 
 
 6
 A genuine issue of material fact exists as to whether RBV was the "procuring cause" for the 55th Street project. It is undisputed that it was RBV that first proposed a building project on 55th Street to Ronson (through the intermediary services of WGS). Shane argues that RBV proposed an earlier, different project to Ronson, one that was never consummated. The 55th Street project that was actually built, Shane argues, was therefore not "procured" through the offices of RBV.
 
 
 7
 RBV, on the other hand, disputes that the eventual building project differed materially from the original proposal that Blitz first pitched to Ronson. Importantly, RBV provides documents that plausibly can be construed as demonstrating that Shane treated the "original" plans as fluid and subject to negotiations. RBV notes that the "separate" projects involve precisely the same parties and are entitled "Phase I" and "Phase II." That Shane later chose to conduct these negotiations directly with Ronson himself, RBV argues, should not enable Shane unjustly to cut RBV out of a commission based on the total extent of the project. The determination of this latter issue is more properly a question for the finder of fact at trial. Consequently, the district court erred in dismissing RBV's claims for equitable relief.
 
 3. Third-Party Beneficiary
 
 8
 The district court granted Shane's motion for summary judgment on RBV's final cause of action as a third-party beneficiary of the indemnification contract between Shane and the Heron Group because it had already determined that RBV was not entitled to a commission. Because we have found that the district court should not have granted summary judgment on the other causes of action potentially establishing an entitlement to a commission, the district court's grant of summary judgment on this cause of action must also be vacated.
 
 III. CONCLUSION
 
 9
 For the foregoing reasons, we vacate the district court's grant of summary judgment, and remand for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Honorable Robert J. Kelleher, of the United States District Court for the Central District of California, sitting by designation
 
 
 [1]
 Under New York law, which both parties agree controls in this diversity case, RBV's contract claims are not precluded by the Statute of Frauds. Licensed real estate brokers, such as Blitz/RBV, are exempt from the Statute's requirement that brokerage commission contracts be in writing to be enforceable. See N.Y.Gen.Oblig.Law § 5-701(a)(10) (McKinney 1989); Andover Realty, Inc. v. Western Electric Co., Inc., 100 A.D.2d 157, 161, 473 N.Y.S.2d 393, 396 (1st Dep't 1984), aff'd, 64 N.Y.2d 1006, 489 N.Y.S.2d 52, 478 N.E.2d 193 (1985)
 
 
 [2]
 "In a mortgage foreclosure action, a lender is entitled to summary judgment if it establishes by documentary evidence both the facts underlying its cause of action and the lack of any triable fact.... The underlying facts the lender must prove are the existence of an obligation secured by a mortgage, and a default on that obligation.' " Union Bank of Switzerland, 1995 WL 121289, at * 5 (citations and internal quotation marks omitted). New York courts have carved out a limited exception to this rule based on principles of promissory estoppel. See Nassau Trust Co. v. Montrose Concrete Prods. Corp., 56 N.Y.2d 175, 186, 451 N.Y.S.2d 663, 668, 436 N.E.2d 1265, 1270 (1982) (reversing a grant of summary judgment where there are "unrefuted facts from which, notwithstanding [mortgagor's] admitted delinquencies, a waiver of the right to declare a default and foreclose may be found by the trier of fact"--specifically, where a letter from an officer of the mortgagee bank referred to a conversation with the President of the mortgagor corporation granting an extension of payment). New York courts have construed this exception strictly. See, e.g., State Bank of Albany v. Fioravanti, 51 N.Y.2d 638, 647, 435 N.Y.S.2d 947, 951, 417 N.E.2d 60, 64 (1980) (holding that "[a] mortgagee may ... be estopped by his conduct from foreclosing, but to defend against a summary judgment motion in a foreclosure action it is incumbent upon the real property owner who relies upon an estoppel defense to produce evidentiary proof in admissible form ... sufficient to require a trial (of that defense) ... mere conclusions, expressions of hope, unsubstantiated allegations or assertions are insufficient" (internal quotation marks and citation omitted)); Flintkote Co. v. Bert Bar Holding Corp., 114 A.D.2d 400, 400, 494 N.Y.S.2d 43, 43 (2d Dep't 1985)(holding that affidavits opposing the motion for summary judgment that set forth "mere conclusions concerning alleged oral representations to forgo foreclosure, rather than a statement of detailed factual allegations" are insufficient to defeat a motion for summary judgment)