198 F.3d 1152 (9th Cir. 1999)
 STEPHEN LESLIE, dba International Projects Development, Plaintiff-Appellant,
v.
GRUPO ICA; ICA CONSTRUCTION CO; ICA INTERNACIONAL S.A.DE C.V.; ANDRES CONESA RUIZ; EMPRESAS ICA SOCIEDAD CONTROLADORA S.A.DE C.V., Defendants-Appellees.
 No. 98-15181
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted August 12, 1999
Filed December 6, 1999
 
 [Copyrighted Material Omitted]
 COUNSEL: James Dirks, Sacramento, California; David K. Sergi, San Marcos, Texas, for the plaintiff-appellant.
 Andrea G. Asaro, Rosen, Bien & Asaro, San Francisco, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Vaughn R. Walker, District Judge, Presiding. D.C. No. CV-94-03059-VRW
 Before: David R. Thompson and Susan P. Graber, Circuit Judges, and Earl H. Carroll, District Judge.[1]
 OPINION
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Stephen K. Leslie ("Leslie") appeals the district court's summary judgment dismissing his diversity action against ICA Construction Corporation, a Florida corporation; ICA Internacional, S.A. de C.V., and Empresas ICA, Sociedad Controladora, S.A. de C.V., both Mexican corporations; and ICA executive vice-president Andres Conesa Ruiz (collectively "ICA" or "Grupo ICA"). Leslie asserts that ICA breached an oral contract to pay him a $100,000 flat fee and a percentage-based fee of more than $1,250,000 for facilitating an introduction between ICA and Perini Corporation, who then formed a joint venture for a construction project. Although the district court recognized that Leslie's deposition testimony and sworn declaration were sufficient, if believed, to survive summary judgment, the court concluded that Leslie's self-serving assertions were so contradicted by Leslie's correspondence with ICA as to be unbelievable. On that basis, the district court granted summary judgment in favor of ICA.
 
 
 2
 We have jurisdiction under 28 U.S.C. S 1291, and we reverse the district court's summary judgment. We affirm, however, the district court's denial of Leslie's motion for recusal. We lack jurisdiction over, and do not address, the district court's award of attorney fees and costs to ICA.
 
 FACTUAL BACKGROUND
 
 3
 The dilemma at the heart of this case is that the plaintiff, Leslie, created two parallel versions of the facts. In his deposition and declaration, he presents a fairly straightforward tale of ICA's breach of an oral contract to pay him a flat fee of $100,000 and a percentage of the ICA-Perini joint project. On the other hand, a long trail of letters from Leslie to ICA appears to show that ICA and Leslie neither formed a contract nor even discussed some of the terms upon which Leslie alleges they agreed.
 
 
 4
 The parties agree that Leslie aided ICA in forming a joint venture between ICA and Perini Corporation, a major U.S. engineering and construction company. In October 1991, Leslie arranged a meeting between ICA and Perini executives. At about that time, Perini agreed to pay Leslie $35,000 if a joint venture between Perini and ICA was ultimately formed. In February 1992, ICA, Perini, and a third company formed a joint venture. In early June 1992, the ICA-Perini joint venture won the bidding process for a tunnel project in Chicago valued at $168 million. Perini paid Leslie $35,000. On several occasions before Leslie filed this action, ICA also offered to pay Leslie $35,000, but Leslie rejected that offer.
 
 
 5
 According to Leslie's deposition testimony and sworn declaration, an ICA executive first approached Leslie in 1990 for help in forming a joint partnership between ICA and a major U.S. engineering and construction company. In December of that year, Leslie met with ICA executive Gumaro Lizarraga, and they agreed that ICA would pay Leslie five percent of ICA's gross portion of the first successfully bid joint venture project, plus a flat feeof $100,000. Two other ICA executives later reaffirmed that agreement.
 
 
 6
 Again, according to Leslie's deposition and declaration, ICA executive vice-president Andres Conesa Ruiz ("Conesa") renegotiated Leslie's contract just before the October 1991 meeting between executives of ICA and Perini. Leslie says that he and Conesa modified Leslie's compensation from a one-time fee for a single joint venture of five percent plus $100,000 to a fee of three percent per joint venture plus a $35,000 one-time fee. Leslie submitted to the district court a letter "memorializing" this agreement which he allegedly delivered to Conesa at the October 1991 meeting. Although an ICA representative later attempted to renegotiate Leslie's flat fee, according to Leslie, the representative assured him that ICA would pay the percentage fee. After the ICA-Perini joint venture's first successful bid on the Chicago project, ICA refused to pay Leslie more than a $35,000 flat fee.
 
 
 7
 Correspondence between Leslie and ICA appears to tell a different story. Although Leslie asserted in this litigation that he had an oral contract with ICA in 1990, his correspondence suggests he did not. He wrote to an ICA executive in September 1991 stating: "If ICA and Perini form a working association, I would at that time like to receive financial recognition . . . . The terms and amount . . . will be reasonable and be negotiated jointly by ICA and Perini with me . . . . " During 1991 and 1992, Leslie and ICA exchanged numerous letters and draft contracts, all of which address a one-time flat fee without reference to a percentage fee. Leslie insisted in one letter that "[t]o be proper and in force the final letter contract must be on company letterhead and signed in ink."
 
 
 8
 After the ICA-Perini venture won the Chicago project in 1992, Leslie wrote to ICA stating that ICA and Leslie "ha[d] not yet executed [a] contract." He submitted with the letter a draft contract for a $50,000 flat fee. A few months later, Leslie wrote to Conesa, insisting that Leslie and ICA had agreed "that if ICA delayed signing of my fee contract until after a joint project with Perini was procured, that my fee would raise significantly to [$80,000]." The letter also stated: "Normally the compensation for such services would be a base fee plus a percentage of the valuation of the ICA percentage of the first procured ICA-Perini joint project . . . . I selected the flat fee in deference to a request from[ICA]." Leslie sent a similar letter to another ICA executive, stating that ICA had "acknowledged and reconfirmed on multiple occasions" that ICA would pay him a fee of $80,000 and that the $80,000 fee was "in lieu of the other post procured project option of payout of a base fee plus percentage of the first project."
 
 
 9
 Finally, in November 1992, Leslie wrote to ICA's chief executive officer, Gilberto Borja Navarrette. The letter stated:
 
 
 10
 "ICA owes me two fees for my ICA commissioned work . . . . The fees were agreed to by [Conesa] . . . . The developmental/ finder fee is a one-time $1,259,250.00 US fee. The ICAPerini joint venture supplemental fee . . . is $80,000.00 US."
 
 
 11
 Leslie attempts, particularly in his sworn declaration, to reconcile the inconsistencies between his current version of events and his prior letters. Leslie asserts that ICA, through an employee who was Leslie's friend, assured Leslie throughout the relevant period that ICA would pay the percentage fee even though ICA tried to reduce the amount of Leslie's flat fee. Leslie contends that this explains why none of his letters refers to a percentage fee. He adds that some of his letters "were written in haste . . . with little if any proofreading," were intended merely to stall ICA's attempt to renegotiate the flat fee, or reflected oral understandings not explicitly discussed. Finally, he asserts that by 1992 he "was desperate, suffering from severe emotional stress and greatly depressed due to [his] dire financial straits and [his] dawning realization that ICA might try to avoid paying [him] what[he] was owed . . . ." As a result, he says that his writing became "garbled and confused" and focused exclusively on immediate payment of his flat fee. ICA contends these assertions amount to nothing more than a feeble attempt to explain away hard facts that belie Leslie's claims.
 
 PROCEDURAL HISTORY
 
 12
 On June 1, 1994, Leslie, in pro per, filed this action against ICA in state court in San Francisco. ICA removed the action to federal court on the basis of diversity jurisdiction. In Leslie's current amended complaint, he asserts claims for breach of oral and written contract, quantum meruit, promissory estoppel, false promise, and negligence.
 
 
 13
 The history of this action, like the underlying facts, is tortured. Leslie has been through four sets of attorneys, two sets of whom withdrew because of ethical conflicts. The district court has given Leslie numerous extensions of time and has accepted filings after deadlines. The district court has imposed monetary sanctions on three of Leslie's various attorneys. At one point, the district court entered summary judgment in favor of ICA on the ground that Leslie had failed to file his opposition to ICA's motion on time. The district court reconsidered after Leslie filed a motion accompanied by a declaration from one of his attorneys, Timothy F. Perry, in which Perry stated that his ability to represent Leslie had been impaired by attention deficit disorder and substance abuse. The summary judgment order was vacated, and Leslie's tardy submissions were considered. The court then granted the summary judgment that is the subject of this appeal.
 
 
 14
 The district court recognized that ICA had "not disputed that Leslie's testimony, if believed, would be sufficient evidence of an oral contract to survive summary judgment." After reviewing the record in detail, however, the court stated that "the only reasonable conclusion to be drawn from the evidence in this case is that Leslie has committed perjury and manufactured evidence." In light of the extensive documentary evidence flatly contradicting Leslie's deposition and declaration, the court concluded: "Because no reasonable jury could possibly conclude that an oral contract existed between Leslie and ICA, defendants' motion for summary judgment as to [Leslie's contract claim] is granted." For similar reasons, the district court then granted summary judgment in favor of ICA on Leslie's other causes of action.
 
 
 15
 Leslie filed a Motion for New Trial and Relief from Judgment, under Federal Rules of Civil Procedure 59(e) and 60(b), arguing that the district court had applied an incorrect legal standard in granting ICA's motion for summary judgment. In support of the motion, Leslie submitted additional deposition testimony and declarations, which he argued corroborated his versions of the facts. The district court denied Leslie's motion.
 
 
 16
 Leslie also filed a Suggestion of Disqualification and Motion for Recusal. Leslie argued that the district court's suggestion that he had fabricated evidence and committed perjury established bias. The district court denied the recusal motion.
 
 
 17
 Leslie then filed a timely notice of appeal from the district court's order granting summary judgment to ICA. After Leslie failed to file an opening brief, despite an extension of time to file, we dismissed the appeal for lack of prosecution.
 
 
 18
 In the meantime, the district court awarded ICA a total of $428,421.49 in attorney fees and costs, which included $228,069.64 awarded against Leslie's then-attorneys, David K. Sergi and Timothy F. Perry. Leslie and his attorneys filed an untimely notice of appeal from that award of fees. After Leslie and his attorneys failed to respond to an order to show cause why the fees appeal should not be dismissed for lack of jurisdiction, we dismissed it.
 
 
 19
 Several months later, Leslie filed a motion to reinstate both of his appeals. His motion was based on the same ground Leslie had used to get the district court to set aside its first summary judgment order. Leslie once again asserted that his attorney, Perry, suffered from mental illness and had abused the prescription drug Ritalin. Leslie attached to his motion the same declaration that Perry had filed previously in the district court. We granted Leslie's motion to reinstate his appeal from the district court's summary judgment. Leslie's appeal from the district court's attorney fee award remains closed.
 
 DISCUSSION
 I.
 Standards of Review
 
 20
 We review de novo a grant of summary judgment. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998). We must determine, viewing the evidence in the light most favorable to Leslie, whether any genuine issue of material fact exists and whether the district court correctly applied the relevant substantive law. See id. We review for abuse of discretion the denial of a motion under either Federal Rule of Civil Procedure 59 (new trial) and under Rule 60(b) (relief from judgment). See School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993). We also review for abuse of discretion the denial of a recusal motion. See United States ex rel. Hochman v. Nackman, 145 F.3d 1069, 1076 (9th Cir. 1998).
 
 II.
 Summary Judgment
 
 21
 In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986), the Supreme Court explained that "the inquiry performed [at summary judgment] is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." The Court explained, however, that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.
 
 
 22
 Despite the Supreme Court's clear pronouncement limiting the scope of summary judgment, other circuits have carved out various exceptions under which a court may disregard self-serving and incredible testimony or affidavits. See, e.g., Seshadri v. Kasraian, 130 F.3d 798, 802 (7th Cir. 1997) (explaining circumstances under which "testimony can and should be rejected without a trial [because] no reasonable person would believe it"); Johnson v. Washington Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.").
 
 
 23
 In cases that ICA contends are similar to the present one, we have held that a court may disregard a "sham" affidavit that a party files to create an issue of fact by contradicting the party's prior deposition testimony. See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) (" `[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " (quoting Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985))); cf. Cleveland v. Policy Management Sys. Corp., 119 S. Ct. 1597, 1603-04 (1999) (recognizing, without endorsing, similar "sham affidavit" holdings of every circuit).
 
 
 24
 In the present case, Leslie's letters to ICA appear to contradict his assertion of a contract entitling him to a percentage fee. This is different, however, from our "sham affidavit" cases, because Leslie's deposition testimony and sworn declaration in this case are consistent and are contradicted only by Leslie's unsworn letters. See Shockley v. City of Newport News, 997 F.2d 18, 23 (4th Cir. 1993) (explaining that a sworn affidavit is not a "sham" merely because it contradicts unsworn letters). Additionally, Leslie's deposition testimony and sworn declaration seek to explain his prior statements. See Messick v. Horizon Indus., Inc. , 62 F.3d 1227, 1231 (9th Cir. 1995) (stating that, even under the "sham affidavit" doctrine, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony" and that "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit"); see also Seshadri, 130 F.3d at 804 (recognizing "that a party might be able to explain away his prior inconsistent statements" and stating that a party should be bound by such statements only if they are unexplained). Here, as the district court acknowledged, if Leslie's deposition testimony and sworn declaration are believed, his claims may not be dismissed on summary judgment.
 
 
 25
 In T. W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626 (9th Cir. 1987), we explained that, "at summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id. at 630-31 (citations omitted). We specifically rejected the notion that a court could disregard direct evidence on the ground that no reasonable jury would believe it. See id. at 631 n.3 ("Were we to construe the [Supreme] Court's statements as requiring a court to ask whether a jury could find in favor of the nonmoving party viewing all of the evidence--both that presented by the nonmoving party and that presented by the moving party--such a construction would contradict the clear instruction that a court may not weigh the evidence or assess its credibility.").
 
 
 26
 Contrary to ICA's contention, we have applied these principles to preclude summary judgment in cases similar to this one. In McLaughlin v. Liu, 849 F.2d 1205, 1207-08 (9th Cir. 1988), we reversed a district court's summary judgment in favor of the plaintiff where the court disregarded the defendant's sworn declaration and sworn answers to interrogatories as "implausible." The case was an action predicated on an employer's violation of the overtime pay provisions of the Fair Labor Standards Act ("FLSA"). In support of its motion for summary judgment, the government presented the defendant employer's records for the pay period ending April 6, 1985, demonstrating that he did not pay overtime during that period. See id. at 1206. The government also submitted the defendant's answers to interrogatories admitting that those individuals who were paid on a piecework basis "were paid only piecework," which implied that the defendant did not pay them overtime. See id.
 
 
 27
 In opposition, the defendant relied on his own declaration that he had paid overtime premiums for piecework for all periods except for the period ending April 6, 1985, and during that period he had deviated from his practice on the mistaken advice of an accountant friend. See id. He also attached a "piecework register" purporting to show proper payments of overtime. See id. In violation of FLSA regulations, however, he had destroyed allrecords of his employees' piecework earnings. See id. at 1207 n.5. The district court suggested that the "register" might not have been prepared until after the litigation began. See id. We reversed the district court's summary judgment, explaining:
 
 
 28
 [The defendant's] sworn statements that he calculated and paid overtime in accordance with the requirements of law are direct evidence of the central fact in dispute. [The defendant] does not ask that inferences be drawn in his favor, but that his testimony be taken as true. To this he is clearly entitled under Anderson ("The evidence of the non-movant is to be believed," 477 U.S. at 255) and a host of other decisions. Summary judgment cannot be justified in the face of such evidence.
 
 
 29
 Id. at 1207-08; see also Eisenberg v. Insurance Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir. 1987) ("[W]e find that the district court's grant of summary judgment was unwarranted . . . . [The non-movant's] declaration is to be accepted as true . . . . [The non-movant's] evidence should not be weighed against the evidence of the [movant]."); Foster, 772 F.2d at 1460-61 ("In her deposition and subsequent declaration in opposition to Arcata's motion for summary judgment, Foster states facts which, if true, could justify an inference that she was qualified for Hamby's position . . . . Such factual issues may not be resolved in favor of the moving party on summary judgment when, as here, the adverse party has supported its position by evidentiary materials as provided in Rule 56. It is enough that these materials consist of the party's own sworn deposition testimony and declaration in opposition to the motion for summary judgment.").
 
 
 30
 Although we can understand the district court's disbelief of Leslie's assertions in his deposition and sworn declaration, such disbelief cannot support summary judgment. The district court based its summary judgment dismissal of Leslie's breach of oral contract, breach of written contract, and quantum meruit claims on the court's rejection of Leslie's evidence. Contrary to ICA's contention, Leslie's evidence raises genuine issues of fact as to these claims. If Leslie's evidence is believed, he and Conesa had a "meeting of the minds" creating a contract in October 1991. As to the quantum meruit claim, if Leslie's evidence is believed, he provided services to ICA that were worth more than the $35,000 he refused to accept. Thus, those issues must be resolved at trial. Similarly, although the district court's summary judgment dismissal of Leslie's promissory estoppel and negligence claims did not rely directly on the rejection of Leslie's evidence, in concluding that Leslie proffered no evidence that he had been damaged, the district court used the same analysis to value Leslie's services that it used to dismiss his quantum meruit claim. That analysis was premised on a disbelief of Leslie's assertion of the agreed-upon value of his services.
 
 
 31
 In sum, the district court's summary judgment must be reversed. Because we reverse that judgment, we do not address Leslie's challenges to the district court's order denying his motion for a new trial and relief from judgment.
 
 III.
 Recusal
 
 32
 After the district court granted summary judgment in favor of ICA, and while Leslie's other post-judgment motions were pending, Leslie moved to disqualify the district court judge under 28 U.S.C. S 455(a) on the ground that the comments the judge had made in the summary judgment order demonstrated a lack of impartiality. Section 455 imposes an affirmative duty upon judges to recuse themselves when " `a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.' " Yagman v. Republic Ins., 987 F.2d 622, 626 (9th Cir. 1993) (quoting In re Yagman, 796 F.2d 1165, 1179 (9th Cir. 1986)). We review for abuse of discretion a district court's denial of a recusal motion. See id.
 
 
 33
 The provisions of section 455"require recusal only if the bias or prejudice stems from an extrajudicial source and not from conduct or rulings made during the course of the proceeding." Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1388 (9th Cir. 1998). In Liteky v. United States, 510 U.S. 540, (1994), the Supreme Court further explained the narrow bases for recusal:
 
 
 34
 Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current pro ceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they dis play a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.
 
 
 35
 Id. at 555.
 
 
 36
 Leslie's allegations stem entirely from the district court judge's adverse rulings. That is not an adequate basis for recusal. See, e.g., United States v. Hernandez, 109 F.3d 1450, 1454 (9th Cir. 1997); Taylor v. Regents of the Univ. of Cal., 993 F.2d 710, 712-13 (9th Cir. 1993); Toth, 862 F.2d at 1388. The district court did not abuse its discretion in denying Leslie's recusal motion. In fact, the procedural history of this case reveals that the district court has been extremely indulgent of Leslie, repeatedly granting extensions of time, accepting latefiled pleadings, granting an untimely motion to amend Leslie's complaint, and reinstating Leslie's action after its initial dismissal.
 
 IV.
 Attorney Fees
 
 37
 The district court awarded ICA its reasonable attorney fees and costs. Part of this award was assessed solely against Leslie on the ground that ICA was the prevailing party. Part of this award was assessed against Leslie's attorneys for badfaith litigation. Leslie and his attorneys filed an untimely notice of appeal of the district court's order awarding fees to ICA. After Leslie failed to respond to an order to show cause why that appeal should not be dismissed for lack of jurisdiction, we dismissed it. That appeal remains closed. Leslie, however, raises the issue of the fees award at the end of his opening brief in this present appeal, arguing that, if we reverse the district court's summary judgment, we should also reverse its award of attorney fees. We reject this argument.
 
 
 38
 We lack jurisdiction to review an order granting attorney fees unless a proper notice of appeal is filed. See Farley v. Henderson, 883 F.2d 709, 712 (9th Cir. 1989); Culinary & Serv. Employees Union, Local 555 v. Hawaii Employee Benefit Admin., 688 F.2d 1228, 1232 (9th Cir. 1982). The award of fees and costs is a collateral issue, see Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988), and our appellate jurisdiction over the merits of Leslie's appeal from the district court's summary judgment does not imbue us with jurisdiction to review the fee award. Because the notice of appeal from the fee award was untimely, we lack jurisdiction to review that award, and the appeal was properly dismissed. See Hasbro Indus., Inc. v. M/S St. Constantine, 705 F.2d 339, 343 (9th Cir. 1983).
 
 CONCLUSION
 
 39
 Because a party's consistent deposition testimony and sworn declaration supporting his claim and explaining inconsistent unsworn statements must be creditedat the summary judgment stage, the district court erred in granting summary judgment in favor of ICA. Accordingly, we reverse that judgment. We affirm, however, the district court's denial of Leslie's motion for recusal; we do not address the district court's award of attorney fees and costs to ICA. Each party shall bear its own costs on appeal. AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Earl H. Carroll, United States Senior District Judge for the District of Arizona, sitting by designation.