Gail HILL, Plaintiff,

v.

META GROUP, Daniel Fitzgerald and Marc Butlein, Defendants.

No. 3:97 CV 477(GLG).

United States District Court, D. Connecticut.

Aug. 16, 1999.

William Sylvester Palmieri, Williams & Pattis, New Haven, CT, for Plaintiff.

Gregory B. Nokes, Joseph Ferraro, Cummings & Lockwood, Hartford, CT, for Defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This is an action claiming employment discrimination based on race (black) and gender (female), brought under both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1983. There is also appended the customary state-law claim of intentional infliction of emotional distress. The defendants have moved for summary judgment on all counts.

Rule 9(c)1 of the Local Rules requires "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." The defendants have filed a seventeen-page document with eighty-five paragraphs.[1] Getting into the spirit of things, plaintiff's counsel has ignored Local Rule 9(c)2, which requires a document "which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 9(c)1 Statement whether each of the facts asserted by the moving party is admitted or denied," and has filed merely the separate section called for by Local Rule 9(c)2, listing material issues of facts as to which it is contended that there is a genuine issue to be tried. Consequently, we accept for purposes of this motion the pertinent parts of defendants' statement of undisputed facts except to the extent they are directly contradicted by the plaintiff's statement of facts in dispute. This leaves us with the following facts.

Plaintiff began employment with the defendant META GROUP ("META") on August 1, 1994, as a regional sales representative. META is in the information technology consulting services business. Its sales department is responsible for maintaining contracts with existing clients as well as developing new business. Although plaintiff contends she was "overqualified" for the position of regional sales representative and should have been made a regional sales director (an outside sales position), she was told prior to being hired that she did not have sufficient technology background for such a position. She was told, however, that within a year she might have sufficient knowledge of the technology to be considered for a sales director's position. There was no guarantee of such a promotion, however.

Plaintiff's duties included conducting telemarketing programs and working with the marketing department to attract clients and prospects to conferences and regional briefings conducted by META. Plaintiff's compensation was $35,000 per year plus commissions based upon the number of individuals she was able to get to attend these sessions. However, when she had been with the company for some nine months, META changed the job duties of all of its regional sales representatives, eliminating the telemarketing program, and terminating the regional sales representatives' travel to conferences. The commission plan was also drastically changed. According to plaintiff's estimates this change reduced her commissions from an estimated $40,000 a year to $10,000 a year. Plaintiff acknowledged being very dissatisfied with these changes but no claim is made that they were put into effect in order to encourage plaintiff to quit.[2] A month or so after these

---

1. According to Webster's 9th Collegiate Dictionary "concise" means "marked by brevity of expression or statement; free from all elaboration or superficial detail; cut short; brief."

2. Nor would it appear that such a claim could reasonably be made since this change affected all regional sales representatives. *But see Russo v. Trifari, Krussman & Fishel, Inc.*, 837 F.2d 40 (2d Cir.1988), where the transfer of most of a department from New York to East Providence, Rhode Island "might be thought by a trier of fact to demonstrate not only deliberate age discrimination but also an appreciation of its illegality and a resultant attempt to conceal it. Russo's case on both the pretext and willfulness issue may not be strong, but is sufficient to survive a motion for summary judgment." *Id.* at 45.

changes were put into effect, and before she had been in her position for one year, plaintiff commenced looking for other jobs outside of META. She applied both in Connecticut and New York City and used the services of various headhunters. Simultaneously, she talked with various META executives about her desire to become a regional sales director or to obtain some other better position. While plaintiff believes that META filled one of the sales director positions during this period, the person hired (a white male) was not hired and did not start until the following month. As to other possible positions within the company which she had discussed with various management personnel, these matters were all still under consideration when she resigned on September 18, 1995, to accept a position with another company which had a better compensation program.

In plaintiff's 9(c)2 statement of material facts in dispute, plaintiff claims that the Chairman of the Board said that plaintiff was not a "good match" for the available positions and that he was "looking for more middle-aged balding men who looked like him." She also cites the statement of a vice president that "typically women do not do as well in the sales positions." Finally, plaintiff offers statistics concerning the hiring of outside sales directors in the year prior to plaintiff's becoming eligible for such a position: that of twenty-five persons hired during that period only one was a woman and only one was a black. (No statistics are offered as to the race or gender of other persons who applied or were considered for those positions but were not hired).[3] It is very rare to have a

META inside sales representative promoted to an outside sales director position, and the only person who accomplished this was a black male. Plaintiff contends that because of META's failure to promote her during the month-and-a-half she believed she was eligible, she was "forced to resign."

## ABANDONED CLAIMS

■ Plaintiff has voluntarily withdrawn her claim alleging a violation of Title VII by the individual defendants Fitzgerald and Butlein.[4] She has also withdrawn her claims brought under 42 U.S.C. § 1983. *See* Pl.'s Mem. in Opp. at 1.[5] Clearly there was no state action involved in this case.

## TITLE VII CLAIMS AGAINST THE CORPORATION

■ Plaintiff pursues her Title VII claim under the theory that she was constructively discharged. As noted earlier, she does not base this claim upon the changes made in the duties and compensation of the inside sales personnel, although she concedes that these changes made her dissatisfied with her existing position. The Second Circuit held in *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184 (2d Cir.1987):

> A constructive discharge occurs when the employer, rather than acting directly, "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." .... To find that an employee's resignation amounted to a constructive discharge ... [the] "work-

---

**3.** Statistics concerning persons promoted absent information concerning how many women and men applied are not meaningful. *Dugan v. Ball State University*, 815 F.2d 1132, 1137 (7th Cir.1987); *Feinson v. New School For Social Research*, No. 95 Civ. 763(MBM)(THK), 1997 WL 742532, at *20 (S.D.N.Y. Dec. 1, 1997).

**4.** As well she might, considering that agents of an employer cannot be held individually liable for alleged violations of Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–17 (2d

Cir.1995). Moreover, they were not named in the EEOC charge filed by the plaintiff and the EEOC right-to-sue letter did not relate to any claims against them.

**5.** Plaintiff's attorneys do extensive work in the Federal Courts, most of their cases involving claims made under 42 U.S.C. § 1983. Perhaps the reference to § 1983 crept into the complaint from a word processor which believes that all of their cases should contain such claims.

ing conditions [must] have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."

*Id.*, at 1188 (citations omitted).

■ This Court has held that the requirement of "deliberateness" is met only if the actions complained of were intended by the employer to force the employee to quit. *See, e.g., Lombardo v. Oppenheimer,* 701 F.Supp. 29, 30 (D.Conn.1987). The constructive discharge must also arise under circumstances giving rise to an inference of discrimination. *Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir.1991). The undisputed facts recited above make it clear that the defendant did not wish the plaintiff to quit and engaged in no conduct intended to have that occur. In her deposition, plaintiff acknowledged that the individual defendants did not treat her maliciously nor did they do anything deliberately to harm her or to promote her resignation. The essence of plaintiff's position can be found on the last page of her opposing Memorandum of Law, in which she states: "It is beyond dispute that indicating to an employee that she cannot be hired for an available position for which she is qualified, on the basis of her race and gender, is extreme and outrageous behavior in a civilized society."

In support of her claim that a failure to promote amounts to a constructive discharge, plaintiff relies upon *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994), for the proposition that the granting of summary judgment on the issue of constructive discharge "may not stand." *Chambers,* however, did not involve a constructive discharge; rather, it concerned a forced termination. *Id.* at 32. Moreover, that case acknowledges that summary judgment can be granted in discrimination cases where there are no genu-

ine issues of material fact. *Id.* at 40. Pursuant to the Local Rule 9(c) statements in this case, there are no material facts at issue concerning the circumstances leading to plaintiff's resignation.

Plaintiff also relies on *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81 (2d Cir.1996). In that case, however, the Court held that there was an issue as to whether the plaintiff had in fact been fired. She had been put on formal probation. On the day she learned that her supervisor was soliciting other company employees for negative information about her, she suffered a nervous breakdown and left work never to return. On the following day, a termination letter was prepared, although the plaintiff did not receive it at that time. In overturning the granting of summary judgment, the Court held that "[s]etting forth these facts should have sufficiently alerted the district court that the possibility of an actual discharge might have precluded summary judgment." *Id.* at 88.[6]

■ If, as the plaintiff maintains, a failure to obtain a promotion that one is qualified for (or believes one is qualified for) justifies calling a resignation a constructive discharge worth one million dollars or more in damages, we would be inundated with even more employment discrimination suits than are our present lot. There is a need in a claim of constructive discharge for aggravating factors driving the employee to resign. *Ternullo v. Reno,* 8 F.Supp.2d 186, 192 (N.D.N.Y.1998). A failure to promote without more is not an aggravating factor, *Dashnaw v. Pena,* 12 F.3d 1112 (D.C.Cir.), *cert. denied,* 513 U.S. 959, 115 S.Ct. 417, 130 L.Ed.2d 333 (1994), nor is the failure to equalize pay an aggravating factor. *Pittman v. Hattiesburg Municipal Separate School Dist.,* 644 F.2d 1071, 1077 (5th Cir. Unit A 1981). Indeed,

---

**6.** We note that the majority of the available judges on the panels in both *Chambers* and *Chertkova* were dissenting judges in the now controlling Second Circuit *en banc* decision in *Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir.1997). (Senior Circuit Judge Feinberg could not participate in the *en banc* consideration since such decisions are limited to active Judges, and Judge Mahoney had died before that appeal was heard).

even unfavorable job assignments along with a discriminatory failure to promote have been found insufficient to establish a constructive discharge claim. *Muller v. United States Steel Corp.*, 509 F.2d 923 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). The undisputed evidence in this case does not come close to supporting a Title VII claim for constructive discharge.

■ However, this Court must construe the evidence in the light most favorable to the party opposing summary judgment and must deny the motion for summary judgment unless no construction of the evidence could support a judgment in the plaintiff's favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 14 (2d Cir.1993). The evidence in this case could conceivably support a discriminatory failure to promote claim.[7] Plaintiff, of course, has not pled such a cause of action probably because the damages would be substantially more limited than under a constructive discharge claim. However, the facts set forth in the complaint and in this motion could support such a claim and, consequently, we do not grant complete summary judgment on the Title VII claim.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The plaintiff has filed an additional state-law claim of intentional infliction of emotional distress. Claims of emotional distress have apparently become a compulsory adjunct to employment discrimination cases in Connecticut. This is not necessarily a desirable development. *See, e.g., Malik v. Carrier Corp.*, 986 F.Supp. 86, 91

(D.Conn.1997). There *are* instances where the emotional distress claim may be successful, while the employment discrimination claims are not. *See, e.g., Id.* at 88. More likely, such claims are inserted to circumvent the damage limitations on employment discrimination cases found in 42 U.S.C. § 1981a.[8]

While the Connecticut courts have allowed infliction of emotional distress claims to be asserted in connection with employment discrimination cases, the Connecticut courts have severely limited such claims to extreme and outrageous behavior. The Connecticut Supreme Court has held that the tort is reserved for conduct that exceeds all bounds tolerated by a decent society and of a nature which is especially calculated to cause emotional distress of a very serious kind. *DeLaurentis v. New Haven*, 220 Conn. 225, 597 A.2d 807 (1991); *Petyan v. Ellis*, 200 Conn. 243, 254 n. 5, 510 A.2d 1337 (1986).

Although plaintiff contends that the issue of whether the conduct was so extreme and outrageous to permit recovery is a matter only for the jury, the Courts in this District have found that it is a matter for determination in the first instance by the Court. *Collins v. Gulf Oil Corp.*, 605 F.Supp. 1519 (D.Conn.1985); *Ziobro v. Connecticut Institute For The Blind*, 818 F.Supp. 497, 502 (D.Conn.1993).

While plaintiff maintains that many cases have found the burden met on far less evidence than plaintiff claims to have here, we find that argument ludicrous. The cases cited by plaintiff concern such things as a husband's falsely telling his wife he had AIDS, *Whelan v. Whelan*, 41 Conn.Supp. 519, 588 A.2d 251 (Conn.Su-

---

**7.** Although it appears that the position plaintiff sought was not filled until after she resigned, it may well be that the position was available before she resigned.

**8.** The plaintiff here seeks compensatory damages in an unspecified amount (including attorney's fees) and punitive damages in the amount of one million dollars. Resort to a Connecticut state cause of action for punitive

damages is not necessarily advisable since Connecticut's laws provide for only limited punitive damages. *Ford v. Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 59 n. 4, 578 A.2d 1054 (1990) (holding that, in Connecticut, punitive damages are to be measured by the reasonable attorney's fees and costs).

per.1991), and threats and assaults from co-employees. *Berry v. Loiseau,* 223 Conn. 786, 614 A.2d 414 (1992). Indeed, numerous cases have dismissed emotional distress claims involving much more egregious behavior than that which is alleged in the instant case. In this case, there is no claim of outrageous behavior whatsoever. As noted earlier, the plaintiff acknowledges that she was treated nicely by her supervisors. All she can point to is the reported statements concerning the kinds of persons they wanted in the sales positions. No case has held that a discriminatory failure to promote, standing alone, amounts to extreme and outrageous behavior. As noted in the prior section, a failure to promote for discriminatory reasons is not a basis for plaintiff's claiming constructive discharge. Consequently we dismiss the intentional infliction of emotional distress claim.

### CONCLUSION

The defendants' motion (**Doc. No. 36**) is **GRANTED** in all respects except for that portion of the Title VII claim which concerns a possible failure to promote for discriminatory reasons.

**SO ORDERED.**