Louise M. **SOARES**

v.

**UNIVERSITY OF NEW HAVEN**

**No. 3:99CV1107(JBA).**

United States District Court,
D. Connecticut.

Aug. 16, 2001.

John R. Williams, Katrena K. Engstrom, Williams & Pattis, New Haven, CT, for Plaintiff.

Sean P. Clark, Glenn Powell, Mayo, Gilligan & Zito, Wethersfield, CT, for Defendant.

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. # 35]**

ARTERTON, District Judge.

## I. Introduction

Plaintiff Louise M. Soares, the former Director of Education Programs at the University of New Haven ("UNH"), filed suit against the University after she was terminated from her position as director, alleging that the termination, which occurred after she disclosed to defendant that she was suffering from "a grave illness which might require surgery," violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634, the Equal Pay Act of 1965, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111, *et seq.* Defendant has moved for summary judgment on all claims [Doc. # 35].

## II. Background

District of Connecticut Local Rule 9(c)(1) requires the moving party to annex to a motion for summary judgment a "separate, short, and concise statement of material facts which are not in dispute." Local Rule 9(c)(2) places a parallel burden on the non-moving party to state "whether each of the facts asserted by the moving party is admitted or denied" and to include a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 9(c)(1) further provides that the facts set forth by the moving party in accordance with that Rule are to be deemed admitted unless controverted

by the opposing party in accordance with Rule 9(c)(2).

■ Defendant here submitted a 9(c)(1) statement of material facts consisting of 127 numbered paragraphs. Although plaintiff filed a 9(c)(2) response, that response does not satisfy the requirements of Local Rule 9(c)(2) to state whether *each* of the facts asserted by the moving party is admitted or denied. Plaintiff's response agrees with 55 of the statements and disagrees with 5 of the statements. However, as to 59 of the remaining statements, it is impossible to determine whether plaintiff admits or denies the statements because plaintiff's response is limited to "agrees in part" (5 paragraphs), "disagrees in part" (34 paragraphs) or "agrees in part, disagrees in part" (16 paragraphs), or are so vague as to be impossible to determine whether the facts are admitted or denied (4 paragraphs).[1]

In addition, plaintiff's "Statement of material facts" does not meet Rule 9(c)(2)'s requirements of setting forth the facts the non-moving party contends are disputed, as it includes facts which are clearly not in dispute, such as "Plaintiff is a female," ¶ 4; "Plaintiff was replaced by a male as Director of Education Programs," ¶ 5; and "Plaintiff was over the age of 60 when the defendant terminated her from the position of Director of Education Programs," ¶ 2. Only one fact contained in plaintiff's statement of material facts is disputed and germane to this lawsuit: "The defendant's stated reasons for terminating the plaintiff from her position as Director of Education Programs are not its true reasons." *Id.* at ¶ 14.

■ "One important purpose of Local Rule 9(c) is to direct the court to the material facts that the movant claims are undisputed and that the party opposing the motion claims are disputed. Otherwise the court is left to dig through a voluminous record, searching for material issues of fact without the aid of the parties." *N.S. v. Stratford Bd. of Educ.*, 97 F.Supp.2d 224, 227 (D.Conn.2000); *accord Hill v. Meta Group*, 62 F.Supp.2d 639, 639 (D.Conn.1999). Plaintiff's nonconforming submission is of virtually no assistance to the Court because the Court cannot determine which facts are disputed. Accordingly, apart from the five paragraphs clearly identified as disputed in plaintiff's Rule 9(c) statement (¶¶ 31, 33, 85, 101, 107) and the eight paragraphs which clearly identify those facts which are disputed and those which are not (¶¶ 14, 20, 21, 29, 32, 34, 35, 42), the remaining paragraphs are deemed admitted. *See Futoma v. City of Hartford*, 208 F.3d 202, 2000 WL 339377 (2d Cir. Mar.29, 2000) (Table op.); *Shoaf v. Matteo*, 100 F.Supp.2d 114, 116 (D.Conn. 2000). With that preliminary caveat, the following summarizes the undisputed facts.

In 1992, UNH became interested in developing a Department of Education and corresponding teacher preparation programs. UNH President Lawrence DeNardis and Provost James Uebelacker sought to hire a professor to develop and operate the Department of Education and corresponding teacher preparation programs. DeNardis and Uebelacker were aware of Dr. Soares' prior experience as a professor of education at the University of Bridgeport. After discussions with Dr. Soares, DeNardis and Uebelacker offered her fixed term appointments as a Professor of Education in the Department of Education in the UNH College of Arts and Sciences and as Director of Education Pro-

---

**1.** The remaining eight of the paragraphs make clear which facts are admitted and which are denied.

grams, a non-teaching position. The terms for both appointments ran from August 1, 1992 through August 31, 1993.

As Director of Education Programs, Dr. Soares was head of the Department of Education and the masters degree/teacher preparation programs, was responsible for administering and directing the department and programs, and was responsible for satisfying and obtaining on behalf of UNH the required internal, state and professional approvals for the teacher preparation programs, including obtaining accreditation from the State Board of Education. Dr. Soares was also the primary contact for State Board of Education personnel on all UNH teacher certification and program accreditation issues, and was responsible for ensuring that all UNH students who applied for state certification had fulfilled the state requirements and for ensuring that UNH programs were in compliance with state education statutes and regulations.

Dr. Soares was not hired with tenure, and her initial appointments were subject to annual one-year re-appointments which expired at the end of the academic year, August 31. Dr. Soares was given re-appointments in her professor and director positions in the 1993–94, 1994–95 and 1995–96 academic years. Dr. Soares first sought tenure in her professor position in the spring of 1995, during her third year of employment. Her application was rejected by the UNH Tenure and Promotions Committee. She then reapplied in spring, 1996, which application was approved, and was granted tenure in May 1996, effective September 1, 1996. The Director of Education Programs position was not a tenure-track position, and remained subject to annual review and reappointment.

Beginning with her initial appointment in 1992 through 1998, Dr. Soares reported directly to the UNH Dean of the College of Arts and Sciences, who was the person authorized to make the reappointment decision with respect to the director and professor positions.[2] During this same time period, the Dean was supervised by Provost Uebelacker, who in turn reported to and was supervised by President De-Nardis. Uebelacker and DeNardis worked closely with the Dean on Department of Education issues, and prior to the time Dr. Soares was granted tenure, each had the authority to oppose a decision by the Dean reappointing Dr. Soares to the director or professor positions. Had Dr. Soares not been re-appointed by the Dean or had the Provost or President opposed her re-appointment, UNH could have given Dr. Soares a one-year termination contract, after which her position would have expired. After Dr. Soares was granted tenure, she was no longer subject to reappointment for the professor position. Thus, in the years 1993–94, 1994–95 and 1995–96, Dr. Soares was given re-appointments to both the professor and director positions by Dean Chepaitis, and was unopposed by the Provost or President. Dr. Soares was given re-appointments to the director position in 1996–97 and 1997–98 by Dean Carriuolo, which again were unopposed.

In 1993, the State Board of Education reviewed UNH's plans to begin its teacher preparation program and gave UNH "fully met" ratings in all categories. Based on this evaluation, the UNH teacher preparation programs were granted full approval for two years with an interim report due at the end of the first two semesters of the program's operation and an on-site visit

---

**2.** When Dr. Soares was hired, Dr. Joseph Chepaitis was the UNH Dean of the College of Arts and Sciences. On September 1, 1995, Dr. Nancy Carriuolo became Acting Dean of the College of Arts and Sciences, and became Dean effective September 1, 1996.

during the third semester to evaluate whether the plans were being implemented according to state standards. This on-site visit occurred during October 1994, after which UNH was rated in forty-nine categories and received two "met with distinction" ratings, forty-five "fully met" ratings, one "partially met" rating and one "not met" rating. UNH's teacher preparation programs were then granted full approval by the state Board of Education in March 1995 for three additional years, through August 31, 1998.

In 1995, following the grant of approval, the state Board of Education began to have concerns about UNH's teacher preparation programs. The Board received letters from students to the state Bureau of Certification and Teacher Preparation Programs expressing dissatisfaction and concerns with the UNH program and letters from other states questioning the accuracy of the UNH recommendation form. The Board also had concerns about inaccurate information on teacher preparation programs on the UNH website, an increase in the number of UNH's off-campus instruction sites without a corresponding increase in regular full-time faculty to teach at those sites, student confusion concerning planned program requirements and cross-endorsement requirements, and difficulties surrounding UNH's students' certification process because of confusing information provided to students by UNH.

However, when the Board wrote to Dr. Soares in 1996 requesting a visit to review these issues and alerting Dr. Soares and UNH to the concerns, Dr. Soares responded in writing on behalf of UNH that the concerns were not the responsibility of the UNH Education Department, not under the authority of the UNH Education Department, not adequately specific, not known to be accurate by UNH or "completely inappropriate." Dr. Soares further denied the request for a visit because she did not see any need or reason for the visit. She did not, however, consult the Dean, Provost or President about the request from the Board or her decision not to grant the request for a visit. Further communications between Dr. Soares and the Board were exchanged in 1997 and 1998, with the Board documenting and reiterating its concerns, and Dr. Soares disagreeing with the Board's statements.

In January 1998, when the Board performed its regularly scheduled review of the UNH teacher preparation programs, the Board noted numerous deficiencies with the UNH program, which were consistent with the concerns previously expressed by the Board. The Board identified three areas in need of significant attention: curriculum, faculty and multiple site locations. In contrast to previous evaluations, UNH received seven "not met" ratings and seventeen "partially met" ratings, and the Board determined to grant only probationary approval to the UNH teacher certification programs for September 1, 1998 through August 31, 1999, and scheduled another on-site visit in Spring 1999. This probationary status was the second most severe sanction that the Board could have imposed, with removal of accreditation being the most severe. The state report dated August 5, 1998 described the issues and concerns that had come to the Board's attention since 1995, and further noted that significant concerns remained as to the curriculum, faculty and site issues that needed to be addressed prior to the Spring 1999 visit. However, the Dean, Provost and President learned several months before the report was issued that the probation period was going to be imposed by the state. The Dean was further advised that Dr. Soares did not have a good working relationship with the Board, and conveyed that infor-

mation to the Provost and President. In addition to the state's report, the Board verbally discussed additional problems and concerns with the UNH administration, including an unapproved teacher preparation program involving UNH and Albertus Magnus College. This unapproved program came to the Dean's attention on May 12, 1998.

Concerned about the one-year probationary period, Dean Carriuolo, Provost Uebelacker and President DeNardis determined that in light of the scope of the problems identified by the Board, the continuing concerns about curriculum, faculty and site issues and the lack of progress on those issues as of July 1998, and past communication problems between Dr. Soares and the Board, new leadership was required if UNH's program was to retain accreditation. They therefore decided to terminate Dr. Soares from the director position. Because Dr. Soares was on vacation in July 1998, however, they decided that the effective date of her removal from the director position would be August 3, 1998, and agreed that Dean Carriuolo would inform Dr. Soares of the decision. Dean Carriuolo then met with Dr. Soares on August 3 and advised her that the Dean, the Provost and the President had determined that she would be removed from her position as director because of the issues with the Board of Education's review. At that same meeting, Dr. Soares advised the Dean for the first time that she was suffering from a serious illness which might require surgery. Dr. Soares did not, however, discuss her illness in any detail at that meeting. Dr. Soares was replaced by Dr. George Reilly as Director of Education Programs.

From August 14, 1998 until October 29, 1998, Dr. Soares was out on paid medical leave, after which she returned to work as a full-time professor in the UNH Department of Education. After she returned to work, plaintiff contends that she was subjected to harassment from her supervisors, forced to work in an office outside her department that was "characterized by a foul smell, lack of heat in winter, windows covered with cardboard, exposed electrical outlets, broken glass littering the floor, and mold." Pl. 9(c)(2) Statement, at ¶ 9. Plaintiff further claims that she was given assignments that conflicted with her medical needs, and that unnamed persons attempted to exclude her from the activities of the Department of Education.

## III. Standard

Summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 107 (2d Cir.1998). A genuine issue of fact is one that, if resolved in favor of the non-moving party, would permit a jury to return a verdict for that party. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

After the moving party meets this burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Instead, that party must "come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely . . . on the basis of conjecture or surmise." *Trans Sport v. Starter Sportswear,* 964 F.2d 186, 188 (2d Cir. 1992) (citation and internal quotations omitted); *see also Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). "The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present." *Gibson v. American Broadcasting Cos.,* 892 F.2d 1128, 1132 (2d Cir.1989).

■■■ Moreover, "trial courts should not treat discrimination differently from other ultimate questions of fact." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (*citing Reeves v. Sanderson Plumbing,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000)). On a motion for summary judgement in an employment discrimination case, courts must carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. *See Bickerstaff v. Vassar College,* 196 F.3d 435, 448 (2d Cir.1999). This determination should not be made through guesswork or theorization. *See id.* Viewing the evidence as a whole and taking into account all of the circumstances, the Court must determine whether the evidence can reasonably and logically give rise to an inference of discrimination. *See id.* "In determining the appropriateness of summary judgment [in a discrimination case], the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury, in assessing whether there was impermissible discrimination and whether the defendant's proffered explanation is a pretext for such discrimination, would be entitled to view the evidence as a whole." *Howley v. Town of Stratford,* 217 F.3d 141, 151 (2d Cir. 2000).

## IV. Discussion

### A. ADA and Rehabilitation Act Claims

■■ A plaintiff who raises a disability discrimination claim bears the initial burden of establishing a prima facie case of discrimination, which requires plaintiff to show:

> that (1)[her] employer is subject to the ADA; (2)[she] was disabled within the meaning of the ADA; (3)[she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4)[she] suffered adverse employment action because of [her] disability.

*Heyman v. Queens Village Comm. for Mental Health,* 198 F.3d 68, 72 (2d Cir. 1999); *see also Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir.1996). For purposes of this motion, defendant does not challenge whether plaintiff is a handicapped person under the disability acts or whether she was otherwise qualified to perform her job, and argues that it is entitled to summary judgment because plaintiff cannot establish

that she was discharged because of her handicap, as the decision to terminate her was made over a week before any of the decision-makers learned of plaintiff's illness. Plaintiff responds that she has met her burden because she was fired immediately after informing her supervisor about her disability.

The Court finds that plaintiff has not met her burden as a matter of law for the simple, and unrebutted, fact that the decision to terminate plaintiff was made on July 21, 1998, before Dean Carriuolo, Provost Uebelacker or President DeNardis had any knowledge of plaintiff's illness. Plaintiff points to no evidence from which it could be inferred that this decision was made at a later date, or by Dean Carriuolo acting alone at the August 3 meeting, and her conclusory denial alone is insufficient to raise a genuine issue of disputed fact for trial. While defendant does not deny that plaintiff was *informed* on August 3 that she was to be terminated after she informed Dean Carriuolo of her illness, the undisputed facts as attested to by the affidavits of Carriuolo, Uebelacker and DeNardis show that this decision was reached almost two weeks prior to defendant's discovery of plaintiff's disability. Thus, the decision to terminate her from the position of director of education programs, the sole conduct at issue in plaintiff's 1999 complaint which is the subject of this motion for summary judgment, clearly was not because of her disability.[3] Defendant's motion is thus granted as to plaintiff's ADA and Rehabilitation Act claims.

### B. *ADEA and Title VII*

Under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973), to establish a prima facie case of discrimination under either Title VII or the ADEA, plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for her job; and (3) that she suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999) (Title VII); *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (ADEA). "To make the required showing, a plaintiff may rely on direct evidence of what the defendant did and said, but more often than not must depend on the cumulative weight of circumstantial evidence to make out a prima facie case." *Tarshis v. The Riese Org.*, 211 F.3d 30, 35–36 (2d Cir.2000) (*citing Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir.1997)).

Plaintiff's burden on establishing a prima facie case is "not onerous." *See Tarshis*, 211 F.3d at 35. The plaintiff simply must submit evidence demonstrating circumstances that would permit a rational fact-finder to infer a discriminatory motive. *See Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996). In a termination case, "[t]he fourth element of the prima facie case may be satisfied by a showing that the plaintiff's position remained open after [she] was discharged, or that [she] was replaced by someone outside his protected class." *Tarshis*, 211 F.3d at 36.

█ Proof of the prima facie case creates a presumption of discrimination that defendant may rebut by producing evidence of a legitimate nondiscriminatory

---

**3.** As defendant correctly notes, plaintiff's allegations of abusive treatment after she returned to work from her medical leave are the subject of her complaint in the related case, 3:00cv2356 (JBA).

reason for the adverse employment decision. *See St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. 2742. Once the employer makes this showing, the presumption of discrimination raised by plaintiff establishing her prima facie case drops out, and the burden shifts back to plaintiff to prove that the proffered reasons are pretextual and that discrimination was the real reason for the employment action. See *id.* at 511, 515, 113 S.Ct. 2742; *Tarshis,* 211 F.3d at 36. "A plaintiff may demonstrate that discrimination was the real reason by showing that it was a motivating factor—although it need not be the only motivating factor—in the employment decision." *Id.*

For purposes of this motion, defendant does not challenge whether plaintiff has met the first three elements of the prima facie case. Defendant argues that it is entitled to summary judgment because plaintiff cannot establish her prima facie case because the circumstances of her termination from the director position do not give rise to an inference of discrimination.

Dr. Soares was born on June 2, 1932, and was sixty-six years old when she was terminated from the director position. It is undisputed that she was replaced by Dr. George Reilly, who was born November 17, 1939. Defendant, however, argues that plaintiff has not met the fourth prong of her prima facie case because the mere fact of her replacement with a man seven and a half years younger than she is, who was also well over forty at the time, does not give rise to an inference of sex or age discrimination. Bearing in mind the "de minimus" burden plaintiff bears at this initial stage on her ADEA and Title VII claims, the Court disagrees.

■ First, the fact that plaintiff was replaced by a person over forty is not dispositive of whether she was discriminated against on the basis of age. *See O'Connor v. Consolidated Coin Caterers*

*Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age."); *Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310, 317 (2d Cir.1999) ("that the fact that the replacement is substantially younger than the plaintiff is a more valuable indicator of age discrimination, than whether or not the replacement was over 40 at the time he assumed the plaintiff's former job responsibilities"). Defendant argues that because Reilly is only seven and a half years younger than plaintiff, no inference of age discrimination can be drawn from defendant's decision to give him the director position. However, the Second Circuit has recently held that "[a] difference of eight years between the age of the person discharged and his replacement ... is not insignificant," and this Court finds that a seven and a half year age difference is sufficient for purposes of plaintiff's prima facie case. *Tarshis,* 211 F.3d at 38.

Although there is some appeal to defendant's contention that the fact that plaintiff initially was recruited by Provost Uebelacker and President DeNardis, and then was reapproved by those decisionmakers for five years (and by Dean Carriuolo for two years) prior to her termination suggests that the decision was not a result of sex or age discrimination, *see, e.g., Dryden v. Tiffany & Co.,* 919 F.Supp. 165, 167 (S.D.N.Y.1996) (the fact that the employer had employed plaintiff for twenty years supported employer's contention that racial discrimination played no role in the decision to terminate plaintiff), the Second Circuit has recently reiterated that the evidence necessary to satisfy this initial burden has been characterized as "minimal" or "de minimis." *Zimmermann v. Associates First Capital Corp.,* 251 F.3d

376, 381 (2d Cir.2001). Consistent with this light burden, that court has also consistently held that "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis." *Id.* (*citing Tarshis v. Riese Org.*, 211 F.3d 30, 36 (2d Cir.2000); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1239 (2d Cir.1995)). Thus, the Court finds that plaintiff has met the elements of her prima facie case as to her Title VII and ADEA claims.

■ Defendant alternatively argues that it is entitled to summary judgment because plaintiff has offered no evidence from which a reasonable factfinder could conclude that the legitimate nondiscriminatory reasons given by the defendant are pretextual and that discrimination was a motivating factor in the decision. According to defendant, plaintiff was terminated from the director position because of the problems UNH's Department of Education had with the state Board of Education, Dr. Soares' own conflicts with the state Board, the sub-standard ratings given to the UNH program by the state in 1998, and the fact that the program while under Dr. Soares' direction was put on a one-year probationary status.

■ To rebut defendant's legitimate nondiscriminatory reason, "[p]laintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and the prohibited factor was at least one of the 'motivating' factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). Plaintiff urges the Court to find that a reasonable fact-finder could infer that defendant's stated reasons for the termination are pretextual because after she returned to work following her surgery

medical leave in October 1998, her supervisors took various allegedly adverse actions against her which were part of a campaign to harass her so severely that she would resign from her tenured professorship. According to plaintiff, because defendant's alleged post-termination attempts to force her to resign her professorship could be explained by age and sex discrimination and cannot be explained by the reasons given by defendant for the termination from the director position—poor performance—a jury could infer that the reasons given for the termination from the director position are pretextual and that age and sex discrimination played a role in that decision.

Only by speculation could a rational jury conclude from this adverse post-termination conduct that defendant's stated reasons for her termination from the director position was pretextual and that sex or age discrimination was a determinative reason for her termination. *Cf. Bickerstaff,* 196 F.3d at 448 ("[A]n inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist."). Although there may be circumstances where post-decision conduct by an employer could support a reasonable inference that the legitimate nondiscriminatory reason proffered by the employer for the decision was pretextual, this is not such a case. Plaintiff has identified nothing in the record from which any reasonable jury could conclude that the reasons stated by defendant "are actually a pretext *and* that the real reason for [her removal] was [her] age [or sex]." *Carlton v. Mystic Transp. Inc.,* 202 F.3d 129, 136 (2d Cir. 2000) (emphasis added). The post-termination acts plaintiff argues here were motivated by age and sex discrimination are the same acts she previously claimed were motivated by retaliation for her complaint

of age and sex discrimination in her other pending case (No. 3:00cv2356 (JBA)).

Although the Court recognizes that "employers are rarely so cooperative as to include a notation in the personnel file that the firing or failure to promote is for a reason expressly forbidden by law," at this stage on a motion for summary judgment plaintiff nonetheless has a burden of coming forward with evidence from which a reasonable factfinder could conclude that her sex or age played a role in defendant's decision-making process. *Bickerstaff*, 196 F.3d at 448 (*citing Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464–65 (2d. Cir.1989)). While plaintiff has submitted hundreds of pages of unabridged deposition testimony, including the complete transcripts of five days of her own testimony, copies of grievance materials and document production responses, she has not directed the Court to any specific portion of this mammoth submission which should be considered as having any bearing on the allegedly disputed facts at issue here, nor has she set forth any evidence supporting an alternate version of the facts which, if credited by the jury, would permit a verdict in her favor. In the face of defendant's well-supported summary judgment motion, plaintiff's conclusory denials are insufficient to create a disputed issue of material fact as to whether the legitimate nondiscriminatory reasons proffered by defendant for her termination are pretextual, and has thus failed to satisfy her burden in opposing summary judgment. Defendant's motion for summary judgment is therefore granted as to plaintiff's Title VII and ADEA claims.

### C. *Equal Pay Act claim*

Defendant has also moved for summary judgment on plaintiff's Equal Pay Act claim. As defendant notes, nothing in plaintiff's complaint contains any factual allegations upon which an Equal Pay Act claim could be based, and plaintiff's opposition to summary judgment does not oppose defendant's motion on this claim. Defendant's motion is therefore granted as to the Equal Pay Act claim.

## V. Conclusion

For the reasons discussed above, defendant's motion for summary judgment [Doc. # 35] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.